[Cr. File No. 116.]

STATE OF NORTH DAKOTA, Respondent, v. EBEN CHAFFEE, Appellant.

(259 N. W. 502.)

Opinion filed March 13, 1935.

440

*Emanuel Sgull,* for appellant.

*A. R. Bergeson,* State's Attorney, for respondent.

NUESSLE, J. The defendant is charged with having failed to provide properly for his wife and for his children contrary to the provisions of § 9594a2, Supplement to the 1913 Compiled Laws. He entered his plea of not guilty and the case was tried to a jury. The jury returned a verdict of guilty. Thereafter the defendant moved for a new trial. The motion was denied and judgment of conviction was entered against him. Thereupon he perfected the instant appeal.

Section 9594a2, supra, provides that "Every man, who without lawful excuse, wilfully fails to furnish proper food, shelter, clothing or medical attendance to his wife; and every person having legal responsibility for the care or support of a child who is under sixteen years of age, unable to support himself by lawful employment, who wilfully fails to make proper provision for such child is guilty of a felony, . . ." The information here charged that the defendant "without lawful excuse did wilfully, unlawfully and feloniously fail to furnish proper food, shelter, clothing, or medical attendance to his wife and having the legal responsibility for the care and support of his two minor children under the age of sixteen years and unable to support themselves by lawful employment, did wilfully, unlawfully and feloniously fail to make proper provision for said children. . . ."

The defendant grounds this appeal on the proposition that the evidence is insufficient to sustain the verdict of guilty returned by the jury. The record is long. The following facts material in the case may be winnowed from it. The defendant was a resident of Fargo. In April, 1931, he advertised for a stenographer. In response to this advertisement the complaining witness applied for the position. The defendant employed her. She had not known the defendant prior to that time. He represented he was a man of large wealth. She says she believed him. She was 23, he 43. He was a man of education and experience; she was not wholly unsophisticated. At the end of two weeks, on May 2, 1931, they went to Minnesota and were married. In fact the defendant had but little property. They set up housekeeping in the little town of Amenia a few miles distant from Fargo. A child was born to them on April 23, 1932, and a second child on April 10, 1933. In the meantime they had lived part of the time in a house in the country some two miles from Amenia. Their living quarters while in Amenia were cramped and crowded but warm and otherwise comfortable. The house in the country was commodious and fitted with modern conveniences. Their married life was at times rather stormy. They had frequent disagreements. Defendant did not get along well with his wife's parents and finally forbad them to visit at his home except subject to the requirements which he imposed, and which were somewhat unreasonable. Except for an occasional small item the only income he had was a salary paid to him for some bookkeeping work. During the first part of their married life this was $100 a month, but in 1932 it was cut down to $50 per month. Thereafter the defendant's income was from $50 to $65 per month. The complaining witness says, and with reason, that the defendant was selfish and niggardly. It appears he had bought practically no clothing for the complaining witness or the children. He admits this but says she was well provided for when they were married and he bought all that was reasonably possible considering his income. Complaint is also made on account of failure to provide sustenance. Here, also, defendant says he provided as well as he was able. In any event, neither Mrs. Chaffee nor the children suffered on account of lack of shelter, food or clothing. The state's principal contention, however, is that the defendant failed to provide proper medical attendance for his wife. During her

first pregnancy she was ill on several occasions and defendant provided medical attention for her. When the second child was born they were living in the country home two miles from Amenia. A day or two before the baby was born complaining witness telephoned for and procured a woman to attend her during her confinement. Sometime during the forenoon of the day the baby was born she asked the defendant to send for the doctor. He said he would do it when it became necessary. The child was born about four o'clock in the afternoon. About half past two the defendant telephoned for the doctor. The latter, however, was busy with another case and told the defendant to call him back in an hour. The doctor was engaged longer than he had thought to be and defendant neglected or was not able to get him until after the child was delivered. The defendant himself attended his wife at the delivery and looked after the child. He administered two morphine hypodermics. Prior to her marriage she had taken some training as a nurse. She had also had some experience as a hospital laboratory technician. He says he administered the hypodermics at her request and with her needle. She denies that the needle was hers. An hour or two after the child was born, the doctor, having been called again, attended complaining witness and delivered the afterbirth. He examined both mother and child and pronounced all well with them. He did not thereafter call upon her. The woman who had been summoned by Mrs. Chaffee remained to care for her some ten days after the baby was born. This woman was not a nurse. Shortly after the baby was born complaining witness' parents came to see her. There was a violent quarrel between her mother and the defendant and she was greatly perturbed thereby. Matters did not mend. On April 27, her parents again visited her and took her and the children away with them. When she left she told defendant she was leaving for good. At the trial, however, she testified she really had intended to return home after "the storm had blown over." On April 28, she went to the state's attorney and swore out a warrant charging the defendant with having failed to provide properly for her and the children. Defendant was thereupon arrested. However, he was released. The record does not disclose what arrangements were made with respect to the matter. He endeavored to have his wife and children return to his home but they did not come back. In the meantime such offers of support as

he made or as were made in his behalf were not accepted. On June 1st complaining witness swore to another complaint and defendant was again arrested. She also swore to a complaint charging him with the unlawful possession or use of narcotics. He was then bound over on the second nonsupport charge and thereafter the information on which he was tried and convicted was filed and the trial was had as hereinbefore set forth.

Section 9594a2, supra, is a statute of compulsion. Its primary purposes are to compel husbands to maintain their wives and to compel those persons having legal responsibility for the care and support of children to support them properly. The punishment prescribed is secondary; a means to these ends. Consistent with its purposes and means the statute places a large measure of discretion in the trial judge. All of these things clearly appear from that portion thereof which provides that upon conviction thereunder the defendant "shall be punished therefor by imprisonment in the state penitentiary for not more than five years *but, before* the trial, with the consent of the defendant, *or at* the trial on entry of a plea of guilty, *or after* conviction, *instead of* imposing the penalty hereinbefore provided, or in addition thereto, the court in its discretion, having regard to the circumstances and to the financial ability or earning capacity of the defendant, may make an order accepting the bond of the defendant to the state, in such amount and with such sureties as the court prescribes and approves, conditioned to furnish the wife or child with proper food, shelter, clothing and medical attention, for such a period, not exceeding five years as the court may order, and in such a case, if there has been a plea of guilty or a conviction, *judgment* shall be suspended until some condition of the bond is violated. The bond may, in the discretion of the court, be conditioned upon the payment of a specified sum of money at stated intervals. Upon the filing of an affidavit showing the violation of any of the conditions of the bond, the accused shall be heard upon an order to show cause, and if the charge be sustained the court may proceed with the trial of the defendant under the original charge, or pronounce sentence under the original conviction, or enforce the suspended sentence, as the case may be. The wife or child, and any person furnishing necessary food, shelter, clothing and medical

attendance to either, may sue upon the bond for a breach of any condition thereof."

The statute defines two offenses: (1) The wilful failure of a husband to provide properly for his wife, and (2) the wilful failure of any person having legal responsibility for the care or support of a child to provide properly for such child. The information charges both of these offenses in the same count. However, it was not challenged on the ground of duplicity.

In enacting this statute the legislature did not attempt to set up any standard of living that must be attained. It did require that proper provision be made for wife and children. Such requirement imposes the duty of providing such food, shelter and clothing and medical attention as are proper, that is, as are reasonably necessary and sufficient to keep the lives of wife and children from danger and discomfort and their health from injury. See State v. Moran, 99 Conn. 115, 121 A. 277, 36 A.L.R. 862; Cowley v. People, 83 N. Y. 464, 38 Am. Rep. 464. Considered in this light we are of the opinion that so far as food, shelter and raiment were concerned there was not sufficient evidence to sustain the state's contention that in these respects the defendant was guilty under the provisions of the statute. And clearly there was no evidence that the defendant failed to provide proper medical attention for the children. It is true the defendant may have been selfish, inconsiderate, unsympathetic and parsimonious. It is true he might well have been more generous in the allowance he gave complaining witness and in providing clothing for her and the children. But we can find nothing in the record that will justify a finding that on account of his default in these respects they suffered any physical discomfort or that their health was in anywise jeopardized. Mrs. Chaffee testified that at times there was hardly enough to eat; that the defendant was indifferent as to whether they were provided with sufficient food; and that when her parents visited her they brought supplies of groceries. Yet, only a short time before the second baby was born she visited her parents in Fargo. The day after she left for this visit she wrote the defendant a most affectionate letter. She spoke about their domestic affairs; she cautioned him to get the meat from the meat man as usual and how to care for it, and if he went to town to get the vegetables as usual. She concluded this letter "Love and

kisses to the sweetest boy and the bestest Daddy" and signed it "Mother and Baby." Defendant admits that during the month of May after the first arrest and before the second he did not contribute to the support of his wife and children. But the evidence is that he offered to make some small payments to her which were refused and, in the meantime, he was endeavoring to induce her to return to their home with the children.

The state on this appeal predicates its case chiefly on the conduct of the defendant at the time of Mrs. Chaffee's second confinement in that he failed to provide proper medical attention at that time. However, the record establishes beyond question that he did endeavor to secure the attendance of the family doctor. It happened that the doctor had another case that required attention and before he was called again the baby was born. Later he did attend Mrs. Chaffee and pronounced that all was well with her and the child.. The defendant was dilatory in calling the doctor and it may be that when he was unable to get him when he did first call he should have tried to procure some other doctor. But, so far as the record discloses, neither mother nor child suffered any injury in fact because the doctor did not earlier attend them. With respect to the matter of the hypodermic needle, so far as the record shows no ill effects were suffered on that account, though the defendant should not have resorted to its use and was subject to censure if not to criminal prosecution for having done so. Of course he is not being prosecuted in this case for the unlawful possession or use of narcotics. In any event, the jury returned a verdict of guilty. And, notwithstanding the weakness of the state's case, we think it may be said that there is sufficient evidence to sustain the verdict in so far as the charge of failure to provide proper medical attention to the complaining witness is concerned. Nevertheless we are of the opinion that a new trial should be had. The information charges two separate and distinct offenses. As we have indicated the record will not sustain a finding of guilt on account of failure to provide properly for the children. And it is impossible to say whether the conviction of the defendant was on account of a finding of failure to provide for his wife, on account of a finding of failure to provide for the children, or on account of a finding of failure in both these respects. Though this in itself may not warrant a reversal, nevertheless it seems to us

that viewing the whole record and under the circumstances there disclosed, the interests of justice require that the judgment be reversed and a new trial ordered.

In view of the fact that a new trial must be had we think it proper to say that in cases of this character where children are involved, the discretion of the trial judge should always be exercised in the direction of attaining the ends at which the statute aims without trial, if that be possible, and certainly without the entry of judgment of conviction except in extreme cases, and then only as a last resort. Helpless and blameless children should not needlessly be made to bear the brand that the world imposes upon those whose parents are convicted felons.

Reversed and a new trial ordered.

BURKE, Ch. J., and BURR and CHRISTIANSON, JJ., concur.

MORRIS, J., did not participate.