STATE of North Dakota, Plaintiff and Appellee,

v.

Terry KOPP, Defendant and Appellant.

Crim. No. 1200.

Supreme Court of North Dakota.

Feb. 1, 1988.

James F. Twomey, Asst. States Atty., Fargo, for plaintiff and appellee.

Lundberg, Nodland, Lucas, Schulz & Lervick, PC, Bismarck, for defendant and appellant; argued by Thomas A. Dickson, Bismarck.

ERICKSTAD, Chief Justice.

Defendant, Terry Kopp, appeals from a criminal judgment rendered against her on July 9, 1986, for attempted theft of property. Terry's conviction resulted from a jury trial in which she was charged with conspiracy to commit arson, accomplice to arson, and attempted theft of property. She did not appeal from the order denying a new trial or from the order denying an arrest of the judgment against her. We affirm.

The origin of the offense for which Terry was convicted dates back to the early morning hours of April 17, 1983, when the house of Terry and Clinton Kopp incurred serious fire damage. Kopps' home is located approximately ten miles south of Fargo, North Dakota, in a rural development known as the "Enchanted Forest Subdivision." Evidence indicated the roof was destroyed beyond repair, but that the exterior and interior walls remained in place.

After the fire, Clinton and Terry Kopp signed a "SWORN STATEMENT IN PROOF OF LOSS." They claimed $200,-850.00 in damages under the policy, including $68,805.00 for personal property. The Kopps itemized their personal belongings in the loss statement they submitted to their insurer, St. Paul Mercury Insurance Company. Terry's conviction stems from her alleged falsification of the loss statement.

Although Terry was acquitted of conspiracy to commit arson and accomplice to arson, knowledge of the facts surrounding the alleged arson is necessary for a complete understanding of this appeal. Clayton Runck, Jr., was charged with Clinton and Terry Kopp with conspiracy to commit arson and as an accomplice to arson. Pursuant to a pre-trial motion Terry's trial was severed from Runck's and Clinton Kopp's trial. The trial court also granted change of venue motions, and both trials were moved to Morton County, North Dakota.

Prior to their trial, both Runck and Clinton Kopp entered into plea agreements pursuant to Rule 11 of the North Dakota Rules of Criminal Procedure. Their plea agreements contained a provision which required truthful testimony regarding anyone's involvement in the arson and attempted property theft. Clinton and Terry Kopp were divorced before Terry's trial, and Clinton served as the State's principal witness against Terry.

During the trial, the State alleged Terry Kopp contacted Runck for the purpose of having the house destroyed by fire and that the Kopps filed an inflated insurance claim for damages to the house and for loss of personal property. To support its allegations, the State relied on the testimony of Clinton Kopp and more than twenty additional witnesses. We undertake here a brief summary of some of the relevant testimony.

Clinton testified that Terry contacted Clayton Runck, Jr., to arrange for the burning of their house. Federal agents, investigating [1] Runck in connection with an alleged arson of an apartment building in Lidgerwood, North Dakota, during May of 1983, searched Runck's possessions and found a hand drawn map which directed the reader to the Kopps' house south of Fargo. Runck testified at a hearing that Terry Kopp gave him the map so that he could find the house to burn it. Terry admits drawing the map for Runck, but contends she drew the map because Runck asked where he could find Clinton.

1. The publicity generated by this investigation and Runck's involvement as a defendant in a federal mail fraud case was the basis of Kopp's motion for change of venue.

On cross-examination during Terry's trial, Clinton was questioned about his plea agreement. He acknowledged that he would receive a one-year suspended sentence pursuant to the plea agreement and that by operation of state law the charge could be converted to a misdemeanor. Further on cross examination Clinton responded "[t]hat's correct" to the question: "And on top of that, arrangements were made and an agreement was reached with the attorney general's office of North Dakota that said that your liquor license wouldn't be in jeopardy?"

Terry testified that she filled out the proof of loss statement and that both she and Clinton provided the list of items damaged and their respective values. She also testified that she did not request a separate claim statement from the insurer. She admitted that the house had been for sale for several years; that she was making payments on the house; that she was behind in her payments on the second mortgage; and that her business, a western clothing store, was experiencing financial difficulty.

The State called several of the insurer's agents who testified, *inter alia*, that the value of the personal property in the Kopp home after the fire was between $6,000 and $10,000; that there were very few personal items in the home; and that the Kopp claim for $68,805 in damaged personal property did not comport with the agents' inspection of the Kopp residence after the fire.

Terry raises three issues on appeal. First, she asserts that she was denied due process under Article I, Section 12 of the North Dakota Constitution. Second, she argues that the trial court should have granted a new trial based on her discovery of new evidence, namely, a letter to the insurer in which she suggested that Clinton should file a separate loss claim. Finally, she asserts that the verdict is contrary to the greater weight of evidence.

Terry's failure to appeal from the orders denying a new trial and her failure to present the first and third issue to the trial court raise the question of whether or not her contentions are properly before us. We conclude that only the second issue is properly before us.

■ Judgment against Terry was entered on July 9, 1986. Prior to entry of judgment, Terry made a motion in arrest of judgment pursuant to Rule 34 of the North Dakota Rules of Criminal Procedure on March 20, 1986. She made a motion for new trial based on newly discovered evidence on April 14, 1986, and renewed the motion on June 30, 1986. Terry did not raise the weight of the evidence issue in the motion for new trial or in the renewal of the motion. On July 11, 1986, Terry appealed from the jury verdict and judgment. She did not appeal from the denial of her motion for a new trial or from the denial of her motion in an arrest of judgment.

■ In an effort to simplify an appeal to this Court, we said in *State v. Haakenson*, 213 N.W.2d 394, 399 (N.D.1973) that:

"The touchstones hereafter for an effective appeal on any proper issue should be (1) that the matter has been appropriately raised in the trial court so that the trial court can intelligently rule on it, and (2) that there be a valid appeal from the judgment. Any other traps for the unwary on the road to the appellate courthouse should be eliminated."

We have applied these criteria in both civil and criminal appeals. *See Scientific Application, Inc. v. Delkamp*, 303 N.W.2d 71, 77 (N.D.1981); *State v. Bergeron*, 326 N.W.2d 684, 686 (N.D.1982). These touchstones are not procedural technicalities nor arbitrary rules; they provide a basis for our jurisdiction and serve as a reminder that we are primarily a court of review, not a court which determines facts and considers legal issues anew.

■ An issue not raised in the trial court is generally not reviewable by this Court unless the issue constitutes "obvious error" under Rule 52(b), N.D.R.Crim.P.[2]

2. An assertion that the verdict is contrary to the greater weight of the evidence cannot, of course, be raised during the course of the trial.

Although such an issue can be raised on appeal from the judgment without making a motion for a new trial, where, as here, a motion for a new

*State v. Miller*, 388 N.W.2d 522 (N.D.1986). Our authority to notice obvious error is exercised cautiously and only in exceptional situations where the defendant has suffered serious injustice. *State v. Miller, supra; State v. Johnson*, 379 N.W.2d 291 (N.D.1986), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1792, 90 L.Ed.2d 337. Terry's alleged denial of due process under the North Dakota Constitution is a novel argument which cannot be viewed as "obvious error" under Rule 52(b), N.D.R.Crim.P. Likewise, Terry's third issue, *i.e.*, the jury verdict is against the weight of the evidence, cannot be viewed as an obvious error when there is ample evidence to support the jury verdict.

In her motion for a new trial, Terry raised only the issue of newly discovered evidence. Although Terry did not appeal from the order denying her motion for a new trial, we will consider the issue of newly discovered evidence because her motion was made and denied before the entry of judgment. Accordingly, the issue before us is whether or not the trial court abused its discretion in refusing to grant Terry a new trial on the basis of newly discovered evidence.

■ A motion for a new trial based on newly discovered evidence requires a showing that:

(1) the evidence was discovered after trial;

(2) failure to learn of the evidence during trial was not the result of defendant's lack of diligence;

(3) the newly discovered evidence is material to the issues at trial; and

(4) the weight and quality of the new evidence would likely produce an acquittal.

*State v. Hegland*, 355 N.W.2d 803, 805 (N.D.1984); *State v. McLain*, 312 N.W.2d 343, 346 (N.D.1981). The trial court's decision will not be set aside unless we find that denial of the motion was an abuse of discretion. *State v. McLain* at 346; *State v. Smith*, 153 N.W.2d 691 (N.D.1967); *State v. Jager*, 91 N.W.2d 337 (N.D.1958).

■ In denying Terry's motion for a new trial pursuant to Rule 33 of the North Dakota Rules of Criminal Procedure, the trial court concluded that Terry's failure to produce the letter at trial represented a lack of diligence. The trial court also concluded the letter to her insurer was not of such a nature that her acquittal would be probable in the event of a new trial. We agree. Although she allegedly discovered a carbon copy of the letter after trial, she should have been cognizant of it before trial, as she is the one who allegedly sent it. The record discloses that several of the items listed as destroyed were items apparently owned by Terry. We conclude the trial court did not abuse its discretion in denying the motion for new trial.

■ Although the two remaining issues are not before us, a short discussion of the merits of those issues is appropriate in the interests of justice. *See, e.g., State v. Lawson*, 321 N.W.2d 514, 515–16 (N.D.1982).

■ The facts surrounding Terry's first contention are complex. She alleges, in essence, that the Assistant Cass County State's Attorney who prosecuted her and the Deputy Attorney General agreed that Clinton Kopp would be able to retain his liquor license under a plea agreement that reduced his three felony counts to a Class C felony. Terry points out that section 10–08–01–01 of the North Dakota Administrative Code [3] prohibits the issuance of a

---

trial was made, the issue must be raised in that motion or it will not be considered on appeal. This restriction applies not only to review of a denial of the motion for a new trial, but also to the review of the appeal from the judgment itself or from a denial of a motion for judgment notwithstanding the verdict. *Andrews v. O'Hearn*, 387 N.W.2d 716 (N.D.1986).

3. Section 10–08–01–01, N.D.A.C., reads in part: "*Qualifications for license.* No retail license shall be issued to any person, nor shall any

such previously issued license be renewed or retained unless the applicant files a sworn statement upon the application showing the following qualifications:

1. The applicant or manager must not have been convicted (excluding administrative sanctions) within five years prior to the application for the license of any violation of any law of the United States or this state or of any local ordinance which law or ordinance relates to:

retail liquor license to any person convicted of a felony offense [4] within five years of an application for a retail liquor license. By allowing Clinton to retain his liquor license if he complied with the plea agreement, Terry argues, the State gave Clinton an impermissible financial stake in the outcome of Terry's trial. Terry also points out that Clinton had not been sentenced prior to his giving of testimony.

Terry's legal contention is that Clinton's testimony deprived her of due process under the North Dakota Constitution because the State's plea agreement with Clinton gave him an incentive to embellish his testimony. Terry argues the State violated her due process rights when it assured Clinton that he could retain his liquor license even though he would be a convicted felon under his plea agreement.

We find Terry's argument to be without merit. As the United States Supreme Court said in *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966):

"The established safeguards of the Anglo–American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury. At the trial of this case, [the informant] was subjected to rigorous cross-examination, and the extent and nature of his dealings with federal and state authorities were insistently explored. The trial judge instructed the jury, both specifically and generally, with regard to assessing [his] credibility. The [U.S.] Constitution does not require us to upset the jury's verdict."

*Hoffa* involved an informant who was compensated to testify against James Hoffa, who was accused of attempting to bribe members of a jury in a civil trial. Hoffa revealed plans to bribe jurors in the presence of the informant. Hoffa and the informant were apparently close friends. *Hoffa* indicates that cross-examination—not exclusion—is the proper method of challenging the weight and credibility of a witness's or informant's testimony.

▇▇▇ Terry may be correct that Clinton had an incentive to lie about Terry's involvement in the fire and the insurance claim. But it does not follow that Clinton's testimony was false, nor does it follow that his testimony was constitutionally inadmissible. *See Hoffa, supra*, 87 S.Ct. at 418. We believe Terry's right to a fair trial was safeguarded by (1) the right, which Terry's counsel exercised to fully cross-examine Clinton about the plea agreement; (2) the court's instructions advising the jury to carefully evaluate the credibility of witnesses, and; (3) the right, apparently exercised by Terry's counsel, to point out in closing argument the features of the plea agreement and the circumstances surrounding it. *See, e.g., State v. Nerison*,

* * * * * *

e. Felony offenses."

**4.** Clinton Kopp was apparently concerned about whether or not he would be able to retain his liquor license under the plea agreement. In response to this concern the Assistant State's Attorney received a letter from the Deputy Attorney General which stated, in part:

"Due to the terms of the plea agreement in this case which contemplates a sentence of not more than one year, all suspended, there is a substantial question as to whether or not this constitutes a felony disposition pursuant to N.D.C.C. § 12.1–32–02(9).

Furthermore, based upon your assurances that this offense does not have a direct bearing on his ability to serve the public as an alcoholic beverage retailer and based upon my own familiarity with this particular case, I concur with your recommendation and position that his liquor license not be suspended and that he be able to renew the license in the future. This agreement, of course, is contingent upon compliance with the terms of his sentence and probation."

The "substantial question" appears to be whether Clinton's felony conviction is converted to a misdemeanor pursuant to section 12.1–32–02(9), N.D.C.C., before or after Clinton successfully completes his probationary period. Section 12.-1–32–02(9) provides:

"12.1–32–02. *Sentencing alternatives—Credit for time in custody—Diagnostic testing.* "9. A person convicted of a felony who is sentenced to imprisonment for not more than one year shall be deemed to have been convicted of a misdemeanor upon successful completion of the term of imprisonment."

It is significant that the letter of the Deputy Attorney General is not a guaranty, it is not unequivocal, but is in the nature of a recommendation.

136 Wis.2d 37, 401 N.W.2d 1 (1987); *United States v. Fallon,* 776 F.2d 727 (7th Cir.1985); *United States v. Dailey,* 759 F.2d 192 (1st Cir.1985). Federal decisions have ruled that it is the "government's pre-selection or pre-targeting of specific persons for implication by the informant that violates due process, not the fact that the informant's fee is contingent upon conviction." *United States v. Risken,* 788 F.2d 1361, 1374 (8th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 329, 93 L.Ed.2d 302; *See also, United States v. Valle-Ferrer,* 739 F.2d 545 (11th Cir.1984). Terry was not pre-targeted for prosecution; rather, her prosecution was triggered by the alleged arson and alleged falsification of an insurance claim.

In support of this assertion, however, Terry relies on *State v. Glosson,* 462 So.2d 1082 (Fla.1985), in which the Florida Supreme Court upheld the trial court's decision to dismiss the defendant's conviction based on prosecutorial misconduct. Terry's attempt to relate *Glosson* to the instant appeal is unconvincing. *Glosson* involved an informant who was paid a ten percent contingency fee in cash for all criminal investigations initiated and participated in by the informant. *Glosson* at 1083. The informant's contingent fee was paid from civil forfeiture proceedings. *Id.* The Florida Supreme Court ruled that the agreement between the sheriff and the informant violated the defendant's due process rights under the Florida Constitution.[5] *Id.* at 1085.

There is a significant difference between directly paying in cash ten percent of civil forfeitures to an informant, in the one instance, and allowing Clinton Kopp, if he testified truthfully as to his involvement and any other person's involvement, to plea bargain three possible felonies down to a recommended sentence of a one-year imprisonment with the sentence suspended for a period of two years, with the further understanding that it be the recommendation and position of the Assistant State's Attorney of Cass County and the Deputy Attorney General that his liquor license not be suspended.

A felony conviction would have jeopardized Clinton's liquor license under section 10–08–01–01(1)(e) of the North Dakota Administrative Code. In determining that Clinton could retain his liquor license, however, the Assistant State's Attorney and the Deputy Attorney General were relying upon a conversion of Clinton's felony conviction to a misdemeanor pursuant to section 12.1–32–02(9), N.D.C.C. *See* n. 3 *ante.* The government in *Glosson, supra,* directly conferred a financial benefit on the witness. Here, the benefit was a recommendation that the license not be suspended. The latter benefit does not compel the conclusion that Terry's due process rights have been violated. Features which clearly distinguish *Glosson* from this case are: pre-targeting of the defendant, entrapment, and giving a financial incentive to the informant to secure a conviction by making his fee contingent upon successful prosecution and subsequent civil forfeiture. None of these features exist in this case. Under the circumstances of this case we discern no violation of due process under the North Dakota or United States Constitutions.

Terry's last contention is that the verdict is against the greater weight of the evidence. Whether or not the verdict is consistent with the greater weight of the evidence is a question within the exclusive domain of the trial court. *State v. Oasheim,* 353 N.W.2d 291, 293 (N.D.1984). We will not disturb a trial court's decision on

---

**5.** Article I, Section 9 of the Florida Constitution reads:

"*Due process.*—No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against himself."

Compare with Article I, Section 12 of the North Dakota Constitution:

"*Section 12.* In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law."

this issue without a showing of an abuse of discretion. *Oasheim* at 293; *State v. Sheldon,* 301 N.W.2d 604, 615–16 (N.D.1980), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204.

Terry failed to raise this issue at the trial court level. Nothing in the record before us suggests that we should assume the function of a trial court to initially review the evidence on appeal in this case. In an arson case, *State v. Carroll,* 123 N.W.2d 659 (N.D.1963), we noted that conflicting and circumstantial evidence, standing alone, does not give an appellate court reason to weigh or determine the sufficiency of the evidence.

" 'Where the circumstances are consistent with the hypothesis of accused's innocence as well as with that of his guilt, the jury, or the trial court trying the case without a jury, must draw the inference, and an appellate court will not substitute its judgment for that of the jury or of the trial court.' "

*Carroll* at 669 *citing,* 24A C.J.S. Criminal Law § 1882 (1962).

For the reasons stated herein, the judgment and jury verdict are affirmed.

VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.