STATE of North Dakota, Plaintiff
and Appellee,

v.

Lonnie MERTZ, Defendant
and Appellant.

Cr. No. 930210.

Supreme Court of North Dakota.

March 30, 1994.

Richard J. Riha, Asst. State's Atty., Bismarck, for plaintiff and appellee.

Ralph A. Vinje, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

Lonnie Mertz appealed from a judgment entered on a jury verdict finding him guilty of class C felony abandonment or nonsupport of a child in violation of § 14–07–15, N.D.C.C. We affirm.

Lonnie and Jessie Mertz were divorced in Burleigh County in 1981. Jessie was awarded custody of their three minor children, Marty, Kristy, and Mindy, and Mertz was ordered to pay $450 child support per month. In 1982, the court lowered the amount of child support to $300 per month. Mertz was behind in his child support payments for much of the time and the total arrearages were approximately $1,000 by summer 1988. The court increased Mertz's child support obligation to $600 per month in July 1988.

In September 1988, Mertz married his present spouse and began working with Hall Construction Company in South Dakota. In December 1988, Mertz was fired from this job. He later filed a claim against Hall Construction Company with the National Labor Relations Board, asserting that he was fired for engaging in union activities. During this period, Mertz received unemployment benefits and worked sporadically. In April 1990, Mertz obtained an interim order from a South Dakota court reducing his child support obligation to $150 per month, but the arrearages continued to accrue on the remainder of the $600 monthly obligation under the North Dakota order. *See* § 14–12.1–31, N.D.C.C.; *Coogan v. Fennell,* 379 N.W.2d 791 (N.D.1985) [prior support order not nullified by subsequent URESA order unless otherwise specifically provided by the court]. According to Mertz, during the time he was unemployed he borrowed more than $50,000 from relatives and others to meet his daily living expenses, to pay child support, and to invest in a business which subsequently failed.

In the meantime, Jessie married Terry Heck. At all pertinent times during their marriage, Terry has helped support Mertz's children. The children also received medical assistance benefits for a period of time. In November 1991, Mertz was granted custody of Marty through a North Dakota court order and his monthly child support obligation was reduced to $450. In an affidavit filed with the court, Mertz stated that he would apply the proceeds he expected to receive from a settlement agreement reached with Hall Construction Company in the National Labor Relations Board action to his child support arrearages.

In 1992, Mertz received a settlement from Hall Construction Company in the principal amount of $61,000. By May 1, 1992, Mertz's child support arrearages totaled $22,736.12. In May 1992, Mertz received checks totaling $27,705.05 from Hall Construction Company. Learning of these disbursements, Jessie obtained an order to show cause why Mertz should not be held in contempt of court for failing to pay his child support arrearages. The court ordered Mertz to deposit the checks from Hall Construction Company with the court before the hearing date.

Although Mertz had been served with the order to show cause, he failed to appear at the hearing and failed to deposit the checks with the court. On May 20, 1992, the court found that Mertz "has sufficient funds to pay this back child support with the settlement with Hall Construction Company through the National Labor Relations Board action" and held him "in civil contempt of court" for his failure to apply the proceeds to the child support arrearages and for his failure to appear at the show cause hearing. The court ordered that Mertz be imprisoned for six months "or until such time as Mertz clears himself of the contempt by paying the child support arrearage, with interest, ..." A bench warrant was issued for his arrest.

In July 1992, Mertz received another check from Hall Construction Company for $24,- 324.25. This money also was not applied toward the child support arrearages. In September 1992, when the arrearages totaled $23,986.12, the State brought this criminal action for abandonment or nonsupport of a child under § 14–07–15, N.D.C.C., asserting that the crime occurred from May through September 1992. Mertz was arrested in Wyoming. He was then incarcerated in North Dakota for six months pursuant to the contempt order. According to Mertz, he did not apply the proceeds from the settlement to pay his child support arrearages because he used the funds to repay his brothers, parents, current mother-in-law, and others who had lent him money when he was unemployed.

After serving the six month jail sentence, Mertz was tried on the criminal charge.[1] The jury returned a guilty verdict and Mertz was sentenced to two years in the State Penitentiary with credit for the six months he had previously served for contempt of court. See § 27–10–17, N.D.C.C.[2] This appeal followed.

## I

Mertz asserts that this criminal prosecution, following the prior adjudication and sentence for contempt of court, violates the double jeopardy clause of the fifth amendment. We disagree.

The double jeopardy clause applies to nonsummary criminal contempt proceedings in the same manner as it does to any other criminal prosecution. *United States v. Dixon,* —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). *See also Hernandez v. State,* 624 So.2d 782 (Fla.Ct.App.1993). However, because both a civil and criminal sanction may be constitutionally imposed with respect to the same act or omission, *see United States v. One Assortment of 89 Fire-*

arms, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), a criminal prosecution based on the same conduct that served as the basis for a prior civil contempt proceeding does not offend double jeopardy principles. *See Yates v. United States,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957); *United States v. Ryan,* 810 F.2d 650 (7th Cir.1987); *In re Grand Jury Proceedings, Horak,* 625 F.2d 767 (8th Cir.), *cert. denied,* 449 U.S. 840, 101 S.Ct. 117, 66 L.Ed.2d 47 (1980); *United States v. Anderson,* 577 F.Supp. 223 (D.Wyo. 1983), *reversed on other grounds,* 778 F.2d 602 (10th Cir.1985); *Baggett v. State,* 15 Ark. App. 113, 690 S.W.2d 362 (1985); *People v. Batey,* 183 Cal.App.3d 1281, 228 Cal.Rptr. 787 (1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1569, 94 L.Ed.2d 761 (1987); *People v. Doherty,* 165 Ill.App.3d 630, 116 Ill.Dec. 323, 518 N.E.2d 1303 (1988); Annot., *Contempt Finding as Precluding Substantive Criminal Charges Relating to Same Transaction,* 26 A.L.R.4th 950, at § 4 (1983). *Compare United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) [sufficiently disproportionate civil penalty constitutes second punishment under double jeopardy clause]; *In re Kurth Ranch,* 986 F.2d 1308 (9th Cir.), *cert. granted sub nom. Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 38, 125 L.Ed.2d 788 (1993) [imposition of $100–an–ounce marijuana tax violated convicted drug offenders' double jeopardy rights]. Accepting for purposes of argument Mertz's assertion that both proceedings involved the same conduct, the dispositive inquiry is whether the prior contempt proceedings were civil or criminal.

In *Baier v. Hampton,* 417 N.W.2d 801, 804–805 (N.D.1987), we discussed the distinction between civil and criminal contempt:

"Generally, in distinguishing civil from criminal contempt, we look at the sanction and its nature and purpose, rather than the conduct. *Shillitani v. United States,*

---

1. In the criminal trial, the court did not allow the parties to introduce evidence of the order to show cause, the contempt order, or Mertz's six-month jail sentence. These facts were developed in an evidentiary hearing on Mertz's pretrial motion to dismiss.

2. Section 27–10–17, N.D.C.C., which provided that punishment for civil contempt was no bar to a criminal prosecution for the same conduct, was repealed by the 1993 Legislature effective August 1, 1993. *See* 1993 N.D.Sess.Laws Ch. 89, § 32; Art. IV § 13, N.D. Const. [legislative enactments take effect on August 1 after filing with Secretary of State].

384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *State v. Stokes*, 240 N.W.2d 867 (N.D.1976). If the sanction's purpose is coercive, that is, to induce performance of an act primarily for another's benefit, the contempt is civil. *State v. Stokes, supra.* If the contemptuous conduct has been concluded and the purpose of the sanction is to punish the offender and vindicate the authority of the court, the contempt is criminal. *Id.* Merely because a coercive sanction incidentally benefits another person does not change the contempt from civil to criminal. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). So too, a punitive sanction that incidentally coerces does not transform criminal contempt into civil contempt. *Id.*

"Usually, in civil contempt, the sanction is conditional in nature so that contemnors carry ' "the keys of their prison in their own pockets" ' and stand committed unless and until they perform an affirmative act. *Shillitani, supra*, 384 U.S. at 368, 86 S.Ct. at 1534, 16 L.Ed.2d at 626, quoting *In re Nevitt*, 117 F. 448, 461 (8th Cir.1902). Conversely, because the purpose of the sanction for criminal contempt is to punish the offender and vindicate the authority of the court, the sanction for criminal contempt is, ordinarily, unconditional. *Gompers, supra.*"

■ Although the underlying purposes of the sanction are germane, they are not controlling in determining whether the sanction is punitive and the proceeding therefore criminal in nature, or remedial and the proceeding therefore civil in nature. *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). The paramount factor is whether the contemnor can be purged of the contempt by performing an affirmative act required by the trial court's order. *Id.*[3]

■ In this case, although the conduct for which Mertz was found in contempt of court encompassed both the failure to apply the settlement proceeds to the child support arrearages and the failure to appear at the show cause hearing, the sanction of six months imprisonment could be avoided if "Mertz clears himself of the contempt by paying the child support arrearage, with interest, . . ." The sanction was therefore remedial rather than punitive because Mertz held the prison keys in his own pocket. *Feiock, supra; Baier, supra.* Mertz was found to be in civil contempt of court.

Mertz asserts, however, that he did not hold the prison keys in his own pocket. He claims that although the trial court found as a fact in the contempt proceeding that "Mertz has sufficient funds to pay this back child support with the settlement with Hall Construction Company through the National Labor Relations Board action," he actually did not have the ability to pay because he used the money to repay others before receiving the court order to show cause and to deposit the checks with the court. According to Mertz, he did not attend the show cause hearing because he "was afraid of the consequences."

■ Judgments rendered by courts of competent jurisdiction are presumed valid. *Farrington v. Swenson*, 210 N.W.2d 82 (N.D. 1973). Any attempt to impeach a judgment by matters which are foreign to the record in an independent action is a collateral attack on that judgment. *State ex rel. Rayl v. Hettinger County*, 467 N.W.2d 98 (N.D.1991). A judgment may not be collaterally attacked by a party to the action in which it was rendered. *Sprynczynatyk v. Celley*, 486 N.W.2d 230 (N.D.1992). Here, Mertz was given notice of the show cause hearing but decided not to attend or to appeal from the

---

**3.** In 1993, the Legislature substantially amended the laws relating to contempt of court. *See* 1993 N.D.Sess.Laws Ch. 89. The legislation eliminates the denomination of specific conduct as either "criminal" or "civil" contempt of court, redefines the specific conduct generically as "contempt of court," and allows a court to impose either a "punitive" or a "remedial" sanction for contempt of court. *Id.; see also* Chapter 27–10, N.D.C.C. The legislation was intended to incorporate the analysis used by the United States Supreme Court and this court for determining the constitutional safeguards that attach to contempt proceedings. *See* Hearings on House Bill 1077 before the House Judiciary Committee, January 11, 1993, and before the Senate Judiciary Committee, March 3, 1993.

judgment rendered. Mertz cannot now collaterally attack the trial court's finding that he had the ability to pay.

Mertz also claims that the prior proceeding could not be for civil contempt because the child support arrearages had been reduced to judgment, and therefore could not be collected through a civil contempt proceeding. However, § 14–08.1–05(1)(a) and (2), N.D.C.C., specifically provides that unpaid child support becomes a "judgment by operation of law" and also authorizes contempt proceedings for failure to comply with a child support order. We have often said that civil contempt proceedings for failure to pay court-ordered child support are appropriate for an obligor with the ability to pay. *See, e.g., Heidinger v. Heidinger*, 426 N.W.2d 566, 567 n. 1 (N.D.1988).

Because Mertz received remedial sanctions for civil contempt of court, the double jeopardy clause does not bar this criminal prosecution for abandonment or nonsupport of a child based on the same conduct.

## II

■ Mertz asserts that the statute proscribing abandonment or nonsupport of a child is unconstitutionally vague. We disagree.

Section 14–07–15, N.D.C.C., provides:

"*Abandonment or nonsupport of child— Penalty.* Every parent or other person legally responsible for the care or support of a child who is unable to support himself by lawful employment, who wholly abandons such child or willfully fails to furnish food, shelter, clothing, and medical attention reasonably necessary and sufficient to keep the child's life from danger and discomfort and his health from injury is guilty of a class C felony.

"Any food, shelter, clothing, or medical attentions, furnished by or through a welfare or charitable program of any governmental agency, civic or religious organization, or a combination thereof, or any intervening third party, on the basis of need, does not avoid, excuse, relieve, or discharge, either parent, or person legally responsible for care and support of a child,

from the criminal penalty for the willful failure or neglect to provide such support.

"Neither may a parent be relieved, excused, nor discharged from such responsibility and criminal penalty provided for herein, for the willful neglect or failure to provide such care and support, if the other parent is providing the child with care and support to the best of his or her ability, but where such care and support is not sufficient to keep the child's life from danger and discomfort, or its health from injury.

"The fact, if it is a fact, that either parent may have secured a decree of divorce awarding the custody of such child, in no manner relieves either parent from the requirements and penalty of this section, except that compliance with the terms of such decree for support of such child must be deemed a compliance herewith; provided, however, that if the parent or other person legally responsible for the care or support of a child who is under the age of eighteen years and unable to support himself, as hereinbefore provided, while in another state, and while such minor child is in this state, willfully and intentionally fails to furnish food, clothing, shelter, and medical attention as herein provided, such failure must nevertheless be construed to have been committed in this state, and all of the laws of this state with reference to punishment apply with the same force and effect as if such abandonment and failure to support had occurred in this state."

■ The due process clauses of the state and federal constitutions require definiteness of criminal statutes so that the language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for judges and juries to fairly administer the law. *Best Products Co., Inc. v. Spaeth*, 461 N.W.2d 91 (N.D.1990). To survive a vagueness challenge, a statute must provide adequate warning as to the conduct proscribed and establish minimum guidelines to govern law enforcement. *State v. Johnson*, 417 N.W.2d 365 (N.D.1987). In other words, "vagueness

occurs when a legislature states its proscriptions in terms so indefinite that the line between innocent and condemned conduct becomes a matter of guesswork." L. Tribe, *American Constitution Law* § 12–31, at p. 1033 (2d ed. 1988). In determining whether the meaning of a statute is fairly ascertainable or adequate warning is given, we view the statute from the standpoint of the reasonable person who might be subject to its terms. *State v. Tranby*, 437 N.W.2d 817 (N.D.), *cert. denied*, 493 U.S. 841, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989).

As we said in *State v. Schwalk*, 430 N.W.2d 317, 320 (N.D.1988):

> " 'But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." *Robinson v. United States*, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. Cf. *Nash v. United States*, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913); *United States v. National Dairy [Products] Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.' " [Quoting *Rose v. Locke*, 423 U.S. 48, 49–50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975) ].

Measured under these standards, we agree with the trial court that, although the statute may be "hard to read because of the way it is drafted," it is neither unconstitutionally vague nor particularly difficult to understand. Stripped of its verbiage, the statute states that a person legally responsible for the care or support of a child incapable of self support is guilty of a class C felony if the person willfully fails to provide support necessary to keep the child's life from danger and discomfort and its health from injury. The statute further states that any interven-

ing care and support provided by a third party does not relieve the person legally responsible from criminal liability for willfully failing to provide that care or support. It also states that compliance with a child support decree is compliance with the statutory requirement of providing care and support. These are not vague and imprecise concepts. They are concepts that find their genesis in the natural, moral, and legal obligations of parents to provide proper support for their children. *See, e.g., Schmidt v. Thompson*, 347 N.W.2d 315 (N.D.1984); *Kinsella v. Kinsella*, 181 N.W.2d 764 (N.D.1970); *State v. Chaffee*, 65 N.D. 439, 259 N.W. 502 (1935).

The boundaries of the proscribed conduct provide adequate warning and are sufficiently distinct for judges and juries to fairly administer the law. We conclude that § 14–07–15, N.D.C.C., is not unconstitutionally vague.

### III

Mertz asserts that the trial court erred in instructing the jury. We disagree.

It is well settled that if the instructions to the jury, when considered in their entirety, correctly advise the jury of the applicable law, there is no error even though the trial court refused to submit a requested instruction which itself was a correct statement of the law. *State v. Huwe*, 413 N.W.2d 350 (N.D.1987), *overruled on other grounds*, *State v. Himmerick*, 499 N.W.2d 568 (N.D. 1993).

Mertz requested an instruction that tracked the language of § 14–07–15, N.D.C.C., and added language that the jury could acquit the defendant if it found the statute vague or confusing. The defendant also requested an instruction that parsed the elements of the offense. The trial court refused to give these requested instructions, but instructed on the elements of the offense in a manner similar to that requested by Mertz. The major difference between the two instructions is that, although both said that the State had to prove "[t]hat a child's life was, in fact, endangered and discomforted or its health injured," the trial court's instruction added the language, "or that it

would have been, had it not been for the assistance provided the child by someone other than either of its parents."

■ We believe the court's instruction correctly advised the jury of the applicable law. Mertz's proposed instruction ignores that part of § 14–07–15 which says any intervening care and support provided by a third party does not relieve the person legally responsible from criminal liability. A statute must be read to give effect to each of its provisions, whenever fairly possible. *County of Stutsman v. State Historical Soc.,* 371 N.W.2d 321 (N.D.1985). Contrary to Mertz's assertion, the statute does not require that, under all circumstances, a child's life must be in actual danger and discomfort and its health in injury to constitute a criminal violation.

■ Arguing that "compliance with the terms of a Decree of Divorce for support of a child, is a defense," and claiming that he was "in compliance with the decree entered by the South Dakota Court during the entire period of time that this offense was alleged to have occurred," Mertz asserts that the trial court did not adequately instruct on this issue. The trial court determined no evidence of compliance with a court decree had been introduced, but instructed the jury that "Court orders are relevant in this case only insofar as they may have bearing on whether any claimed unlawful conduct on the part of the defendant was willful."

■ A defendant is entitled to a jury instruction on a legal defense if there is evidence to support it. *State v. McIntyre,* 488 N.W.2d 612 (N.D.1992). Mertz was charged with abandonment or nonsupport of a child from May through September 1992. At that time, Mertz had child support arrearages totaling more than $20,000. The South Dakota interim child support order setting payments at $150 per month was entered in April 1990. Mertz's child support obligation was modified to $450 per month by the North Dakota court order entered in November 1991 which also granted him custody of Marty. The November 1991 North Dakota order was the most recent in time and controlled during the period in question. The prior

South Dakota order, as a matter of law, did not reduce his child support obligation under the subsequent North Dakota order. *See* § 14–12.1–31, N.D.C.C.; *Coogan, supra.* The trial court admitted the South Dakota interim order in evidence and Mertz was allowed to question witnesses about it. Under these circumstances, the trial court did not err in instructing the jury that the relevance of court orders was limited to Mertz's intent.

## IV

Mertz asserts that the jury verdict is not supported by the evidence. We disagree.

■ To successfully challenge the sufficiency of the evidence on appeal in a criminal case, the defendant must show that the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *State v. Fasching,* 461 N.W.2d 102 (N.D.1990).

■ Mertz's argument on the insufficiency of the evidence rests on his incorrect interpretation of § 14–07–15 as requiring that there be proof of actual harm to the children in order to support a conviction. As the statute says, and as we have interpreted it, a person responsible for support cannot avoid criminal liability for nonsupport merely because a third party intervenes and provides that necessary support. While there is no direct evidence that the children suffered actual harm, there is evidence that the children would have suffered harm had it not been for the assistance of Terry Heck and Burleigh County Social Services. Viewing the evidence in the light most favorable to the verdict, we conclude that there is substantial evidence to support the jury's guilty verdict.

## V

■ Relying on *State v. Carpenter,* 301 N.W.2d 106 (N.D.1980), Mertz asserts that because § 14–07–19, N.D.C.C., allows the defendant to give a bond in lieu of a conviction for abandonment or nonsupport of a child, it creates a classification based upon wealth in violation of the equal protection clause.

The constitutional validity of this statute was not raised in the trial court. Generally, issues not raised below, even constitutional issues, will not be addressed on appeal unless the alleged error rises to the level of obvious error under Rule 52(b), N.D.R.Crim.P. *State v. Miller,* 388 N.W.2d 522 (N.D.1986). Our authority to notice obvious error is exercised cautiously and only in exceptional circumstances where the defendant has suffered serious injustice. *State v. Kopp,* 419 N.W.2d 169 (N.D.1988). We do not view this alleged constitutional error as rising to the level of obvious error. *See State v. Steffes,* 500 N.W.2d 608 (N.D.1993); *City of Bismarck v. Nassif,* 449 N.W.2d 789 (N.D. 1989); *State v. Prigge,* 437 N.W.2d 520 (N.D. 1989); *City of Grand Forks v. Cameron,* 435 N.W.2d 700 (N.D.1989); *Kopp, supra; Miller, supra.* Consequently, we decline to address the issue.

We have considered Mertz's other arguments and they do not affect our decision.

The judgment of conviction is affirmed.

MESCHKE, LEVINE, NEUMANN and SANDSTROM, JJ., concur.