Helgi THORLAKSON, Petitioner,

v.

Glenn E. WELLS, the Sheriff of
Pembina County, Respondent.

Cr. No. 444.

Supreme Court of North Dakota.

May 11, 1973.

Hubert S. Cayley, Cavalier, for petitioner.

Neil W. Fleming, Pembina County State's Atty., Cavalier, for respondent.

PAULSON, Judge.

On October 9, 1969, the District Court of Pembina County adjudged and decreed an absolute divorce between Dorothy and Helgi Thorlakson. One of the provisions of that judgment required Helgi to pay alimony to Dorothy in the amount of $125 per month.

Helgi became delinquent in his alimony payments and at various times three orders to show cause were issued against him, ordering him to appear and present evidence, if any, why he was in arrears.

On February 9, 1972, the District Court of Pembina County issued its findings of fact and order which set forth that Helgi had willfully disobeyed an order of the same court dated March 10, 1971, by failing to pay the alimony ordered when he had the money to do so. Pursuant to the court's order of February 9, 1972, Helgi was ordered to prepare a statement of income and expenses for the year 1971 and give it to Dorothy's attorney, and to make a similar statement for each month in which he failed to make the $125 alimony payment.

On March 7, 1973, the District Court of Pembina County found Helgi to be in contempt of its orders of March 10, 1971, and of February 9, 1972, and ordered that Helgi be incarcerated for fifteen days, commencing on March 12, 1973, unless he could show cause on that date why he should not be incarcerated.

On March 13, 1973, the District Court of Pembina County ordered that Helgi be incarcerated for fifteen days for noncompliance with the court's order of March 7, 1973. On March 13, 1973, Helgi then petitioned the District Court of Pembina County for a writ of habeas corpus, which petition was denied by that court on March 14, 1973.

Helgi now petitions this court for an original writ of habeas corpus under Chapter 32–22 of the North Dakota Century Code. The only evidence presented to us for consideration is that which is contained in the judgment roll. We will address ourselves to the major issues involved.

■ The first issue before us is whether habeas corpus is an available remedy for a person who has been incarcerated for civil contempt for failure to make alimony payments when ordered by the court to do so.

During oral argument before this court, counsel for petitioner, Helgi Thorlakson, asserted that habeas corpus was available to petitioner for two reasons: 1) because he was incarcerated; and 2), because he was so incarcerated illegally, under subsections 1, 3, and 4 of § 32–22–17, which provide for the discharge of a person restrained:

> "1.  When the jurisdiction of such court or officer has been exceeded;
>
> .     .     .     .     .     .
>
> "3.  When the process is defective in some matter of substance required by law rendering such process void;
>
> "4.  When the process, though regular in form, has been issued in a case not allowed by law;"

Because the petitioner claimed his inability to pay as a reason for not making the alimony payments which were in arrears, we believe that only subsections 1 and 4 of § 32–22–17, N.D.C.C., have any possible merit. The process issued by the district court was not defective; thus, petitioner's claim for discharge under subsection 3 of § 32–22–17 has no merit.

In 39 Am.Jur.2d, Habeas Corpus § 96, page 247, the use of habeas corpus to review contempt proceedings is described as follows:

> "The acts constituting the alleged contempt may generally be examined on habeas corpus to ascertain whether in law they constitute a contempt. If they do not, the court was without jurisdiction to

imprison, and the prisoner is entitled to be released."

The petitioner claims that he was unable to pay the alimony ordered by the district court and therefore was not in contempt of court and should be released under subsections 1 and 4 of § 32–22–17, N.D.C.C., because the court was without jurisdiction and the process issued in this case which resulted in his incarceration was not allowed by law.

Section 32–22–16, N.D.C.C., provides:

"If no legal cause is shown for the imprisonment or restraint or for the continuation thereof, the court must discharge the party from the custody or restraint under which he is held."

Therefore, in our review of the case, if we find no legal cause for the petitioner's restraint, we must discharge him from his incarceration.

In Fournier v. Roed, 161 N.W.2d 458 (N.D.1968), we expanded the use of the writ of habeas corpus to include the review of claims of constitutional deprivation resulting in incarceration. Though there are no claims of state or federal constitutional violations in the instant case, we find that the facts and circumstances of petitioner being incarcerated and his asserting the statutory grounds under § 32–22–17, N.D.C.C., are sufficient bases upon which to petition for a writ of habeas corpus.

■ The second issue to which we address ourselves is whether it was necessary for petitioner's wife, Dorothy, to exhaust other remedies for the collection of a money judgment before resorting to the use of contempt proceedings. Petitioner contends that there must be such exhaustion of remedies. The same contention was made in the case of Gross v. Gross, 53 N.D. 480, 206 N.W. 793, 794 (1925), where it was argued thusly:

"It is argued that a remedy for enforcement, where the judgment requires a money payment, is an execution . . .

and that, since an execution may be had, the party in whose favor this provision of the judgment runs is not entitled to enforce it through the medium of contempt . . ."

The court, in Gross, supra 206 N.W. at 794, answered such contention by stating:

"The argument, in our opinion, does not make proper allowance for the real scope of the statute vesting authority in the district courts to compel the parties to divorce actions to provide for the maintenance of the children. The duty of maintenance is a specific duty and is not necessarily discharged by the payment of a definite amount of money in the event that it can be made out of the property or effects of a defendant after levy, notice, and sale upon execution. It is a duty which the court is authorized to compel either party to perform, and which they may be required to perform whether they have property subject to execution or not. As the court has power to compel, it may fix a time when payment or other provision is to be made, and it may compel the furnishing of the maintenance at the time and in the manner stated. It may likewise compel the furnishing of security. Section 4406, Compiled Laws for 1913 [present § 14–05–25, N.D.C.C.].

"The mere fact that the judgment, for purposes of convenience, adopts the measure of a money payment in stated installments, is incidental—the duty nevertheless is as specific as though the court had required the assignment of an aliquot part of the defendant's salary or wages. And the further fact that for these installments, either as they mature or accumulate, the plaintiff may have an execution, is likewise immaterial in our view of the matter; for the execution would not result in a full measure of compliance with the judgment."

We adopt the same rationale in the instant case.

■ This reasoning on the enforcement of alimony payments was followed in the case of Raszler v. Raszler, 80 N.W.2d 535 (N.D.1956), where this court stated in paragraph 1 of the syllabus:

"The enforcement of the payment of alimony may be by way of proceedings under Chapter 27–10, NDRC 1943 [Chapter 27–10, N.D.C.C.], citing the party charged with such failure for contempt of court."

The use of contempt proceedings to enforce payment of alimony has been upheld recently in the case of Nugent v. Nugent, 152 N.W.2d 323 (N.D.1967); and in the case of Kack v. Kack, 169 N.W.2d 111 (N.D.1969), where it was held in paragraph 5 of the syllabus:

"For reasons stated in the opinion, the order holding that contempt proceedings will not lie to enforce the judgment is reversed. . . ."

We therefore hold that contempt proceedings are appropriate for enforcing payment of court-ordered alimony.

■ The final issue is whether or not Helgi Thorlakson was in contempt of court. The law in this State is that one accused of contempt must purge himself of it or show that it was legally justified. In Buchmann v. Buchmann, 202 N.W.2d 677, 680 (N.D.1972), the court set out two principles on the burden of proof in contempt proceedings:

". . . 1) that the complainant's burden is *only* to show that contemptuous acts were committed by the defendant; and, 2) that the burden is on the defendant to show that his contemptuous acts were legally justified. 17 C.J.S. Contempt § 84(2); 17 Am.Jur.2d, Contempt § 51."

In the instant case the complainant, Dorothy Thorlakson, sustained her burden of proof by submitting her affidavit of December 19, 1969, in support of her motion for the first order to show cause, wherein she averred that the petitioner was behind in his alimony payments in the amount of $200 and that she verily believed that he could afford to make said alimony payments; and by her later affidavits in support of subsequent orders to show cause, to wit:

1. January 7, 1971, affidavit in support of motion for order to show cause wherein she claimed petitioner to be $425 in arrears and that employment was available to petitioner.

2. February 4, 1972, affidavit in support of an order to show cause, sworn to by her attorney, wherein it was claimed that petitioner had failed to make numerous payments and that he was therefore in contempt, since he was able to make the payments.

3. December 15, 1972, affidavit in support of an order to show cause, sworn to by her attorney, wherein it was claimed that petitioner missed two payments and had not submitted an income and expense statement as ordered by the court and that he was able to pay the alimony because he had a substantial rent payment owed to him.

The petitioner has never denied his delinquency in alimony payments and the complainant, Dorothy, need only show that the contemptuous acts were committed by Helgi, so the burden of proof now shifts to the petitioner to show that his acts were justified, or to purge himself of the contempt. Where the petitioner has admitted that he is in arrears, his burden of proof is more difficult to sustain than the complainant's, because he must show more than mere nonpayment; he must show valid reasons to legally justify his contempt or that his acts were not contemptuous.

The petitioner in the case at bar makes no attempt to prove his acts were not contemptuous; rather, he offers inability to pay as a reason for violating the court's

orders to pay alimony. The only evidence the petitioner offers is his affidavit of March 7, 1973, which purports to describe his financial condition and show his inability to pay alimony of $125 per month as ordered by the district court. That affidavit sets out that the petitioner is unemployed, has no savings or liquid assets, has no available credit or rental income, and has been unable to comply with the orders of the district court to pay alimony. The affidavit of petitioner also lists his indebtedness and some of his assets. The affidavit does not specifically mention his ownership of farm land, which is a fact, because counsel for petitioner in oral argument before this court concedes that the petitioner owns a one-half interest in a half-section of land in Pembina County. The fact that petitioner owns land is evidenced by a statement in his affidavit disclosing that he owes $3,500 to the Federal Land Bank. In addition, counsel in oral argument stated that the petitioner owned approximately 1300 bushels of wheat which was subject to a government loan. We take judicial notice of the present market value of wheat and that such value is considerably in excess of the loan value. The record presented to this court could have been better established by both the petitioner and the respondent, in that the facts could have been supplied to the court in greater detail and such detailed showing would have been of assistance to the court. However, we believe that there is a basis sufficient to support the trial court's decision and to support our decision in this case.

■ We believe it to be a very important consideration that the district court was able to observe the parties during the numerous hearings and make informed determinations as to petitioner's ability to make the alimony payments. As we have not been presented, as a part of the record in this case, with any certified transcripts of testimony taken at the hearings on the various orders to show cause issued, we believe that the affidavit of the petitioner is insufficient in itself to sustain petitioner's burden of proof. See Buchmann v. Buchmann, 202 N.W.2d 677 (N.D.1972). We therefore find that the petitioner has not shown that he did not have the ability to make the alimony payments ordered by the district court; that he was in contempt for not making such payments; and that he was properly incarcerated by the district court.

The writ of habeas corpus is, accordingly, quashed.

STRUTZ, C. J., and TEIGEN, ERICKSTAD, and KNUDSON, JJ., concur.