Maxine Louise KLITZKE, Plaintiff
and Appellee,

v.

Alan Rodney KLITZKE, Defendant
and Appellant.

Civ. No. 9912.

Supreme Court of North Dakota.

July 15, 1981.

Lanier, Knox & Olson, Fargo, for plaintiff and appellee; argued by P. W. Lanier, Jr., Fargo.

Pancratz, Kruger, Wold, Yuill & Johnson, Fargo, for defendant and appellant; argued by Eugene A. Kruger, Fargo.

VANDE WALLE, Justice.

Alan Klitzke appealed from a divorce judgment of the district court of Cass County. We affirm.

Maxine Klitzke commenced a divorce action against Alan Klitzke in January of 1979. In June 1979, Alan counterclaimed for a divorce on the same ground, irreconcilable differences. After numerous hearings, and a trial which was held on November 7, 1979, and reopened February 15, 1980, the district court granted mutual divorces and issued its order regarding property division, child support and costs.

A central item in the dispute that developed over the division of the Klitzkes' property was a tract of land owned by Klitzke Brothers, Inc. Alan Klitzke owns one-half of the stock in this corporation and his

brother owns the other half. The land which comprises the primary property of the corporation had been deeded to the corporation by warranty deed from Alan Klitzke, Maxine Klitzke, Alan's brother and his wife, and Alan's mother and stepfather. The land occupies approximately 60 acres adjacent to the west bank of the Red River south of Fargo. The record indicates that Klitzke Brothers, Inc., had subdivided the land into 28 residential lots ranging in size from approximately one to eight acres per lot with the intention of filling the sub floodplain lots and selling them. At the time of the trial, some of this development had taken place and seven of the individual lots had been sold for prices ranging from $8,000 to $9,600 per lot.

During the course of the proceedings in the divorce action, the trial court made several attempts to have the Klitzkes present evidence of the present value of the subdivision. Both Alan and Maxine claimed that they could not afford to pay for an expert's appraisal. The trial court offered its own plan for arriving at a valuation, and, while Maxine agreed to go along with this plan, Alan refused. Instead, Alan presented evidence which represented his opinion that further development of the subdivision was economically not feasible and that the land was essentially worthless.

The trial court concluded from the evidence before it that the land was worth between $14,000 and $100,000 and ordered that Maxine receive, as a portion of her share of the couple's property, $19,800 plus interest at a rate of 7 percent per annum in equal amortized payments. In addition, the court ordered that the family home be held in tenancy in common and awarded Maxine possession of the home for ten years from July 1, 1980. At the end of the ten-year period, or earlier if Maxine should decide, the house is to be sold and the proceeds divided equally between Maxine and Alan. The court also awarded Maxine custody of the couple's minor child and $200 per month

child support, a tractor-lawn mower, and her costs.[1]

Alan raises these issues:

1. Whether or not the trial court made an equitable division of the property represented by Alan's shares in Klitzke Brothers, Inc.

2. Whether or not the trial court erred when, prior to the judgment, it ordered Alan to continue paying to Maxine $200 per month as temporary child support after one of the Klitzkes' two children moved out of Maxine's home and into Alan's home.

3. Whether or not the trial court erred in awarding possession of the home to Maxine.

4. Whether or not the trial court erred in awarding the tractor-lawn mower to Maxine.

5. Whether or not the trial court abused its discretion by awarding Maxine's costs to be taxed against Alan where mutual divorces had been granted.

6. Whether or not the trial court erred in ordering 7 percent interest on the unpaid balance of the property distribution payments.

In a divorce action, a trial court must make an equitable distribution of the parties' property and may compel either party to provide child support to the custodial parent as well as other types of support as the court deems just. Section 14–05–24, N.D.C.C. To assist the court in making the determinations arising out of Section 14–05–24, this court has adopted the *Ruff-Fischer* guidelines.[2] These guidelines allow a trial court to consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time; its value and its income

1. Other property was awarded to both parties but is not the subject of an issue in this appeal.

2. See, *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966).

producing capacity, if any, and whether it was accumulated or acquired before or after their marriage; and such other matters as may be material. *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D.1979).

This court's position regarding our review of appeals arising out of property division and child support was recently set forth in *Sanford v. Sanford*, 301 N.W.2d 118, 126 (N.D.1980), where we pointed out that: A trial court's determinations on matters of child support and division of property are treated as findings of fact; these findings will not be set aside on appeal unless clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P.; a finding of fact is not clearly erroneous unless the reviewing court is left with a firm and definite conviction that a mistake has been made; and the mere fact that the appellate court might have viewed the facts differently, if it had been the initial trier of the case, does not entitle it to reverse the lower court.

The trial court's findings of fact do not contain a finding as to the property owned by the Klitzkes at the time of the divorce. However, the record indicates that a hearing was held July 10, 1980, for the purpose of rendering a decision in the Klitzkes' divorce case. In that hearing, the trial court stated its findings of fact with regard to the nature and value of the Klitzkes' property. In *Hust v. Hust*, 295 N.W.2d 316, 321 (N.D.1980), we stated at footnote 3:

> "We are of the opinion that an oral recitation by the court from the bench which is fully recorded is entitled to consideration on appeal, under Rule 52(a), to the extent that it contains findings of fact or conclusions of law by the court."

The only limitation on this proposition is where a discrepancy exists between such an oral recitation and the findings of fact. In that case, the latter prevails for the purposes of our review. *Schmidt v. Plains Elec., Inc.*, 281 N.W.2d 794 (N.D.1979). Because of the absence of a finding with regard to the nature and value of the Klitzkes' property in the trial court's findings of fact, there can be no such discrepancy in the instant case, and we accordingly review the findings appearing in the transcript of the oral recitation from the bench which the trial court rendered July 10, 1980.

The trial court found that the value of Alan's stock in Klitzke Brothers, Inc., was between $14,000 and $100,000. In light of this finding, the court awarded Maxine $19,800. Alan now claims that Maxine never held an interest in the property owned by Klitzke Brothers, Inc. Presumably, Alan is arguing that on this basis Maxine should not have been awarded the $19,800 as part of the property division. Although the record demonstrates that Maxine deeded to Klitzke Brothers, Inc., her interest in the land that comprises the property of that corporation, it also appears that Alan, not Maxine, held legal title to the property at the time of the conveyance to the corporation. We have previously held that the fact that property of one spouse was acquired prior to marriage is only one consideration weighing in favor of granting it to such spouse at a division of property upon divorce, but it does not prevent the court from awarding the property to the other spouse if necessary to an equitable distribution. *Fine v. Fine*, 248 N.W.2d 838 (N.D. 1976). More importantly, we have consistently held that in making an equitable distribution, the court must consider all of the property of the parties, both jointly *and individually owned*. See, e. g., *Bellon v. Bellon*, 237 N.W.2d 163 (N.D.1976). Thus, the fact that Maxine may not have held legal title to the property deeded to the corporation, nor any interest in the corporation, does not prevent an award of that property, or a cash payment in lieu thereof, to her. Furthermore, the record reflects testimony that $18,000 of Alan and Maxine's money "went into" the corporation.

Alan relies more heavily on the argument that the trial court was in error in reaching its valuation of the property in question. The record is replete with Alan's attempts to demonstrate to the trial court that if he were to continue to develop the subdivided land owned by Klitzke Brothers, Inc., he would ultimately lose money. He

makes the same argument to this court and asks us to join his conclusion that the high cost of developing the subdivision into residential lots renders it valueless. We decline his invitation because we do not believe that the question of whether or not money should be invested in the development of land for a particular purpose is relevant to the issue. The record is abundantly clear that the trial court went to great lengths to get the parties to present evidence indicating the present value of the land. The court, correctly so, was not concerned with the economic feasibility of Alan's original intention for the land. In spite of the court's attempts to implement methods to procure the evidence it needed to determine the value of the land, Alan concentrated his emphasis on his development costs. Because of this, the court was left with limited evidence regarding the value of the land but arrived at its finding based on that evidence. A review of the record does not leave us with a definite conviction that the trial court made a mistake in arriving at its conclusion.

■ Alan's next contention centers on a child-support order issued by the trial court March 20, 1980, requiring Alan to continue paying $200 per month child support to Maxine. On May 17, 1979, the time of the original temporary child-support order, the Klitzkes' two minor children were living with Maxine. Several months after the original order for child support, the Klitzkes' oldest child moved in with Alan. At that point, without benefit of a trial court modification, Alan reduced the $200 per month child-support payment to $100 per month. The March 20, 1980, order also required Alan to pay an additional $100 per month until the arrearage was paid in full.

Alan now claims that he should not have been obligated to pay the $200 per month child-support after his son moved in with

him.[3] He contends that it was his understanding that the $200 per month represented $100 per month per child. In *Corbin v. Corbin*, 288 N.W.2d 61 (N.D.1980), we considered a situation wherein a divorced father had independently reduced his child-support payments when his oldest child reached 18 years of age. The judgment had provided that for support of his five minor children, the father was to pay $375 per month. The father had interpreted that amount to represent $75 per month per child and, accordingly, reduced his monthly payments by $75 per month upon his oldest child's eighteenth birthday. This court concluded that where a provision for child-support payments is for a lump sum, in the absence of modification by the trial court, the lump sum remains payable until the youngest child reaches the age of majority. See also, *Gasser v. Gasser*, 291 N.W.2d 272 (N.D.1980).

In the instant case, we see no reason to deviate from the rule enunciated in *Corbin*. The fact that the payments in *Corbin* arose from a judgment while the payments in this case arose from an order prior to the final divorce decree is not significant.

■ Alan's next claim is that the trial court was "unrealistic and unfair" when it awarded Maxine possession of the family home for up to ten years. Alan argues that, if the trial court's theory was to provide a home for the Klitzkes' eleven-year-old daughter, the court went four years beyond the child's age of majority and thus exceeded its "equitable discretion."

The record does not reflect whether or not the trial court was considering a home for the Klitzkes' daughter when it awarded use of the family home to Maxine for up to ten years.[4] However, even if the trial court had based its decision on this consideration, we know of no rule which requires that such collateral support be terminated when

3. Shortly after the Klitzkes' son moved in with Alan, he turned 18 years old. The date of this birthday is not reflected in the record.

4. We believe that the nature of the award indicates that the trial court was not necessarily concerned that the daughter live in the particular dwelling involved. Our belief rests in the fact that Maxine was free to sell the family home on the day following the judgment. Her only obligation would have been to divide the proceeds with Alan.

a child reaches the age of majority. Again, we are not left with a firm conviction that the trial court made a mistake in the way it awarded the use of this property.

Alan also contends that the trial court erred when it awarded the tractor-lawn mower to Maxine. He refers us to portions of the trial transcript which he says demonstrate that the mower was owned by Klitzke Brothers, Inc. We have studied these portions, and indeed the entire transcript, and have found no indication whatsoever that this machine was owned by the corporation. What we have found in the transcript regarding the mower is Alan's contention that Klitzke Brothers, Inc., needs, not owns, the mower. We have also found evidence that the machine, with its snow-blower attachment, could be a necessary implement for the operation of the family home. It was on the basis of need that the trial court made its decision as to the lawn mower and our review of the record does not lead us to conclude that the trial court's decision was clearly erroneous.

Alan's next argument is that where a trial court grants mutual divorces, it is an abuse of discretion for that court to allow taxation of costs against a party who is not "at fault." The taxing of costs is discretionary with the trial court in a divorce case. *Badberg v. Badberg*, 193 Neb. 844, 229 N.W.2d 552 (1975). Therefore, Alan's argument is essentially that by exercising its discretion the trial court abused its discretion. We do not agree. This court has made it clear that abuse of discretion by the trial court is never assumed and must be affirmatively established. *Davis v. Davis*, 268 N.W.2d 769 (N.D.1978). In this regard, Alan has failed. Our review of the record, particularly those portions relating to the financial situations of Maxine and Alan, cause us to refrain from a conclusion that the trial court abused its discretion by providing that Maxine should have her costs taxed to Alan.

Alan's final contention is that the trial court erred when it ordered him to pay interest at a rate of 7 percent per annum in equal amortized payments on the unpaid balance of the $19,800 Maxine is to receive as part of her share of the couple's property. He asserts that this is in direct conflict with Section 47–14–05, N.D.C.C. That section sets the legal rate of interest at 6 percent per annum, unless a different rate is contracted for in writing. We do not agree with Alan because we believe that statute is not a limitation upon the court's authority to make an equitable distribution of property in a divorce case. In the instant case, we cannot conclude that the trial court erred when it awarded Maxine, as part of her share of the property distribution, interest at a rate of 7 percent per annum.

The judgment of the trial court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.