Daryl E. JOHNSON, Plaintiff and Appellee,

v.

Carlotta L. JOHNSON, Defendant and Appellant.

Civ. No. 940162.

Supreme Court of North Dakota.

Feb. 8, 1995.

Thomas A. Wentz, Jr., of Pringle & Herigstad, Minot, for defendant and appellant.

Judith E. Howard, of Howard Law Firm, Minot, for plaintiff and appellee.

LEVINE, Justice.

Carlotta L. Johnson appeals from an order of the district court vacating a prior order to show cause why Daryl E. Johnson should not be held in contempt of court for noncompliance with a divorce judgment. We reverse and remand.

Carlotta L. Johnson and Daryl E. Johnson were divorced in June 1987. At that time, the parties entered into a stipulated settle-

ment which was incorporated into the divorce judgment. A portion of that stipulation obligated Daryl to "pay to each child the sum of $300.00 per month for a maximum of four years, if any child shall attend college and maintain passing grades." Carlotta and Daryl are the parents of two children, Corey, born September 12, 1972, and Melissa, born May 19, 1976.

Corey completed high school in 1990 and enrolled in college. Initially, Daryl complied with the stipulation; however, he stopped making the $300 monthly payment in December 1993. At that time, Daryl wrote to Corey, requesting that Corey contact him, or he would no longer feel obligated to make the "college" payment. Upon Corey's receipt of the letter, Carlotta contacted the Regional Child Support Enforcement Agency and requested assistance enforcing Daryl's obligation under the divorce judgment. The agency refused to assist Carlotta because Corey was not a minor. Carlotta then initiated a contempt proceeding in district court and the court issued an order to show cause to Daryl. Daryl, after receiving the order to show cause, attempted to pay his arrearage, $900 at that time, to the clerk of the district court. The clerk, however, refused to accept the payment because it was not support for a minor child. The next day, February 24, 1994, Daryl sent the $900 directly to Carlotta on behalf of Corey.

The show cause hearing was held on February 28, 1994, three days after Carlotta received the $900 from Daryl. Following the hearing and submission of post-hearing briefs, the district court vacated the previous order to show cause, reasoning that Daryl's obligation under the divorce decree was for "collateral support," not "direct child support," and therefore, contempt was not an appropriate method of enforcing the judgment.

On appeal, Carlotta argues that the $300 per month which Daryl is obligated to pay under the original divorce judgment is child support and therefore, may be enforced by contempt proceedings. Daryl does not dispute that he is obligated to pay the $300, but argues that the issue is moot because he has purged himself of the possible contempt by paying the arrearage and that support for a child over the age of majority is "collateral" support not enforceable by contempt proceedings.

## APPEALABILITY

■ The first issue we consider is whether the district court order vacating the order to show cause is appealable. Although neither party raised this question, the right to appeal is statutory and we consider it *sua sponte.* E.g. *State v. Himmerick,* 499 N.W.2d 568 (N.D.1993).

■ Section 27–10–01.3(3), NDCC, permits an appeal to the supreme court "from any order or judgment finding a person guilty of contempt." E.g., *Ronngren v. Beste,* 483 N.W.2d 191 (N.D.1992). Although, in this case, the trial court did not enter an order or judgment finding any person guilty of contempt, this court, long ago, held that an order dismissing an order to show cause why a party should not be held in civil contempt of court is appealable under the predecessor of NDCC § 28–27–02.[1] *Merchant v. Pielke,* 9 N.D. 245, 83 N.W. 18 (1900).

In *Merchant,* the court held that section 5626(2), Rev.Codes (1899), a precursor to NDCC § 28–27–02(2), and identical to it, authorized an appeal from an order dismissing

1. Prior to 1993, our contempt statutes defined specific conduct as either "civil contempt" or "criminal contempt." *See State v. Mertz,* 514 N.W.2d 662 (N.D.1994). This court had construed the distinction between civil contempt and criminal contempt as dependent on the nature and purpose of the requested sanction. *Id.* Subsequently, the legislature eliminated the civil-criminal distinction. *See* NDCC § 27–10–01.1, et seq.; NDSL 1993, ch. 89 § 10; *Mertz,* 514 N.W.2d at 666 n. 3. Section 27–10–01.1(1),

NDCC, now defines the formerly specific conduct generally as contempt of court and NDCC § 27–10–01.2(1) "allows a court to impose either a 'punitive' or 'remedial' sanction." *Mertz,* 514 N.W.2d at 666 n. 3. The amendments incorporate the analysis of this court and the United States Supreme Court and clarify when the constitutional guarantees applicable to criminal or civil cases attach to a contempt proceeding. S.Jud.Comm. Minutes, H.B. 1077 (March 3, 1993).

an order to show cause in a contempt proceeding. Section 5626(2), Rev.Code, said:

"[t]he following orders when made by the [trial] court may be carried to the supreme court:

"2. A final order affecting a substantial right made in special proceedings or upon a summary application in an action after judgment."

Reasoning that an order to show cause in a contempt proceeding is comparable to a motion in an action after judgment, the court held that the order dismissing the order to show cause was a final order affecting a substantial right and hence, was appealable under § 5626(2). *Merchant*, 9 N.D. at 248, 83 N.W. at 20; N.D.Rev.Codes § 5937 (1899) [presently NDCC § 27–10–08 (1993 Supp.)].

■ Although section 5954, N.D.Rev. Codes (1899), a predecessor to NDCC § 27–10–01.3(3), appeared to prohibit an appeal from any order in a contempt proceeding other than one adjudging a defendant guilty, the court rejected that interpretation as contrary to the purpose of the statute.

"[Section 5954, Rev.Codes] gives an accused party who has been adjudged guilty of contempt a right of appeal in both civil and criminal contempts. But we do not think it was intended thereby to exclude all other appeals in connection with contempt. Before that statute was enacted, this court had held in the Davis Case that an accused person adjudged guilty of a criminal contempt had no right of appeal.... The statute was, we think, enacted to establish a contrary rule to that announced in the Davis Case,[2] but we do not think it ever entered the legislative mind to suspend a portion of the general appeal law in civil cases." *Merchant*, 9 N.D. at 248–49, 83 N.W. at 20.

We believe *Merchant* governs the issue of appealability in this case. Our present stat-utes on appealability differ only inconsequentially from the statutes construed in *Merchant*. We presume the legislature is aware of judicial construction of a statute, and from its failure to amend a particular statutory provision, we may presume it acquiesces in that construction. *E.g., Kline v. Landeis*, 147 N.W.2d 897 (N.D.1966). Accordingly, the order vacating the order to show cause why Daryl should not be held in contempt of court for failure to comply with his court-ordered support obligation is a final, appealable order. *See also Bergstrom v. Bergstrom*, 320 N.W.2d 119 (N.D.1982) [permitting an appeal from an order finding the defendant not guilty of civil contempt].

## MOOTNESS

■ Daryl contends that the appeal should be dismissed because it is moot. He argues that he has purged himself of his obligation under the divorce decree by paying the $900, and regardless of the outcome of the appeal, contempt proceedings will not lie against him.

■ Generally, when the question raised in an appeal becomes moot, we dismiss the appeal. *Walker v. Schneider*, 477 N.W.2d 167 (N.D.1991). An appeal is moot when, due to the lapse of time or occurrence of related events, an appellate court is unable to render effective relief. *Backes v. Byron*, 443 N.W.2d 621 (N.D.1989). However, when the controversy is one of great public interest and involves the power of public officials, or when the question is capable of repetition, yet evades review, we will not dismiss the appeal. *Walker*, 477 N.W.2d at 169.

We do not believe that Carlotta's appeal is moot simply because Daryl has paid the arrearage. A party seeking a contempt order may seek imposition of several remedial sanctions including "an amount to reimburse

---

2. In *State v. Davis*, 2 N.D. 461, 51 N.W. 942 (1892), the court had stated that an accused person adjudged guilty of a criminal contempt had no right of appeal under the law. The legislature subsequently enacted section 5954, N.D.Rev.Code (1895) (presently NDCC § 27–10–01.3(3)) to say:

"Appeals may be taken to the supreme court from any final order adjudging the accused guilty of contempt and upon such appeal the supreme court may review all the proceedings had and affidavits and other proof introduced by or against the accused...."

The *Merchant* court interpreted section 5954, Rev.Codes, as overturning the outcome in *Davis*, but not as prohibiting all other appeals in contempt proceedings. *Merchant v. Pielke*, 9 N.D. 245, 83 N.W. 18 (1900).

the party for costs and expenses incurred as a result of the contempt." NDCC § 27–10–01.4(1)(a). Thus, Carlotta was entitled to request reimbursement for her litigation costs incurred as a result of bringing the original contempt action. Daryl's subsequent attempt to pay the arrearage does not render Carlotta whole or afford her the full measure of relief to which she may be entitled under the statute. *See Thorlakson v. Wells,* 207 N.W.2d 326 (N.D.1973).

◼ In addition, this issue is one that is capable of repetition, yet will continue to evade review. *See Collins v. Collins,* 495 N.W.2d 293 (N.D.1993). In *Collins, supra,* the trial court had entered an order denying a request by the State of Nevada for income withholding against Larry Collins, whose child resided in that state. Larry argued that, because he had quit his job and left North Dakota, the issue was moot and the appeal should be dismissed. We rejected the argument, reasoning that the question of whether an interstate income withholding order should be entered under these circumstances was capable of repetition and would evade review when an obligor quit a job or left the state to evade income withholding for child support. *Id.*

This case presents an analogous situation. An obligor who refuses to comply with a court order of support for a post-majority-age child, forces the obligee to incur the costs of litigation, despite the obligor's decision, when faced with an order to show cause, to pay the arrearage in an effort to purge the contempt. Therefore, we agree with Carlotta that the question is capable of repetition, yet will otherwise evade review, and we conclude that it is not moot.

## ENFORCEMENT OF JUDGMENT

◼ Carlotta argues that the trial court was wrong in concluding that contempt was not an appropriate means of enforcing the support provision of the divorce decree. Daryl, relying on our holdings in *Klitzke v. Klitzke,* 308 N.W.2d 385 (N.D.1981), and *Freyer v. Freyer,* 427 N.W.2d 348 (N.D.1988), argues that the district court was correct in concluding that support for an adult child is collateral support, not direct child support

for a minor child, and therefore, contempt is not an appropriate enforcement mechanism. That conclusion, however, reflects a misunderstanding of the basis for the distinction between direct and collateral support.

*Klitzke* concerned an appeal from an original divorce judgment in which the husband argued that the trial court abused its discretion in awarding the wife use of the family home for a period of ten years from the time of the divorce. He contended that if the trial court made the award to provide a home for the parties' eleven-year-old daughter, it exceeded its discretion by awarding support for a child over the age of majority. *Klitzke,* 308 N.W.2d 385. We characterized the award of the house as "collateral support" and said, "we know of no rule which requires that such collateral support be terminated when a child reaches the age of majority." *Id.* at 389–90.

In *Freyer,* a child support obligor challenged a trial court's modification of his child support which required him to pay $400 per month until his son graduated from high school and then $300 per month until the youngest child "turned eighteen or completed high school, whichever occurred later." 427 N.W.2d at 349. The obligor-father argued that a parent's duty to support his children terminates when the child reaches majority and that the trial court had no statutory authority to award support for a child over the age of eighteen. *Id.* Citing *Klitzke,* we determined that in appropriate circumstances, it was permissible for a trial court to award direct or collateral support for a child over the age of eighteen and upheld the trial court's award. *Id.* at 351. *See* NDCC § 14–09–08.2(4) [parties may agree to support of adult children].

◼ The distinction between direct and collateral support rests upon the kind of support that is ordered, not the age of the child for whom it is ordered. If the support obligation is met by permitting a custodial parent and children use of family property, or other in-kind, non-cash benefits, the support is "collateral" support. *E.g., Klitzke,* 308 N.W.2d 385. If the support obligation requires the obligor to make cash payments for the benefit of the child, then it is "direct"

support. *E.g., Freyer,* 427 N.W.2d 348. Thus, Daryl's obligation to pay $300 per month to any child attending college is, in fact, court-ordered *direct* support for a child over the age of majority.

However, whether the court-ordered support is "direct" or "collateral" is not the dispositive issue. The ultimate question raised by this appeal is whether the legislature intended to preclude parties to divorce judgments from using contempt of court to enforce provisions in divorce judgments ordering support for adult children.

Interpretation of a statute is a question of law which we review de novo on appeal. *Olson v. N.D. Dept. Transp. Dir.,* 523 N.W.2d 258 (N.D.1994). We read a statute in relation to other statutes involving similar subject matter in an attempt to discern the legislature's intent, and harmonize the statutory scheme. *Ebach v. Ralston,* 469 N.W.2d 801 (N.D.1991). Our duty is to fulfill the object of the legislature. *Id.*

The contested provision in this decree was a part of a stipulation voluntarily entered into by Carlotta and Daryl. Once the trial court incorporated the stipulation into its divorce decree, the stipulation merged into the judgment and we are concerned only with enforcement of that judgment. *Sullivan v. Quist,* 506 N.W.2d 394 (N.D.1993).

Section 27–10–01.1, NDCC, generally authorizes a court to impose sanctions for contempt of court for the "[i]ntentional nonpayment of a sum of money ordered by the court to be paid in a case where by law execution cannot be awarded for the collection of the sum." However, in the area of divorce judgments in particular, the legislature has seen fit to authorize the remedy of contempt to enforce court-ordered child support, NDCC § 14–08.1–05(2), spousal support, NDCC § 14–05–25.2, and property division, NDCC § 14–05–25.1. These statutes make contempt an additional remedy, regardless of the availability of execution. *Id.,* §§ 14–05–25.1, –25.2, and 14–08.1–05. *See also Thorlakson v. Wells,* 207 N.W.2d 326 (N.D.1973) [holding that a party need not exhaust other remedies before initiating a contempt proceeding].

Although we have never explicitly addressed the availability of contempt as an enforcement tool for court-ordered support for an adult child, we do not believe the legislative scheme governing enforcement of divorce judgments precludes contempt as a mechanism for enforcement of the judgment. In effect, Daryl asks us to ignore the obvious intent of the legislature to permit divorced parties to use the expedient summary procedure of contempt to enforce provisions awarding money or property in a divorce judgment. He urges us to carve a single exception to an otherwise comprehensive statutory scheme that vests a wide latitude of discretion in divorced parties' ability to select the most effective enforcement mechanism and the court's ability to respond. We decline to do so and hold that the legislature intended that contempt proceedings be available to compel enforcement of all provisions of a divorce judgment, including those ordering support for adult children.

We reverse the order to vacate and remand for proceedings to determine whether or not Daryl should be held in contempt.

VANDE WALLE, C.J., NEUMANN and SANDSTROM, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of MESCHKE, J., disqualified.