# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 06-6038ND

_____

| | | |
|---|---|---|
| In re: Jeffery A. & Nancy Kukowski | * | |
| Debtors | * | |
| | * | |
| Jeffery A. & Nancy Kukowski | * | Appeal from the United States |
| Appellants | * | Bankruptcy Court for the |
| | * | District of North Dakota |
| | * | |
| | * | |
| v. | * | |
| | * | |
| Michael L. Wagner, Trustee, | * | |
| Appellee | * | |

_____

Submitted: November 24, 2006
Filed: December 21, 2006

_____

KRESSEL, Chief Judge, VENTERS and McDONALD, Bankruptcy Judges

McDONALD, Bankruptcy Judge

-1-

Debtor appeals from the order of the bankruptcy court[1] sustaining Trustee's objection to Debtor's claim of exemption of monthly payments he receives pursuant to an annuity. We affirm.

## I.

The relevant facts are not in dispute. Debtor, a North Dakota resident, was severely injured in a car accident in 1989 in which he became permanently disabled. Debtor is unable to work because of the disability. Debtor brought a personal injury action against the other driver. The other driver's insurance company, State Farm Fire and Casualty ("State Farm"), eventually reached a settlement of the tort claim with Debtor in 1991. (the "Settlement Agreement").

Pursuant to the Settlement Agreement, State Farm paid a lump sum of $20,000.00 to Debtor and also purchased an annuity from Prudential Insurance Company ("Prudential") in favor of Debtor. (the "Annuity"). Under the terms of the Annuity, beginning in January 1992, Debtor receives $290.00 per month until he dies. The Annuity, however, also provides that Prudential will pay Debtor or his beneficiary the $290.00 monthly payment for 360 months beginning in January 1992 regardless of whether Debtor dies within that time period. Thus, the payments under the Annuity will be payable to Debtor's beneficiaries upon Debtor's death only if Debtor dies before January 1, 2022.

Debtor and his wife filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on October 9, 2005. Debtor claimed his interest in the payments under the Annuity as exempt under N.D. CENT. CODE §28-22-03.1(3). Trustee objected, arguing that §28-22-03.1(3) only exempts annuities that are payable on

_____

[1] The Honorable William A. Hill, Chief Judge, United States Bankruptcy Court for the District of North Dakota.

account of the annuitant's death. The bankruptcy court agreed and sustained Trustee's objection. This appeal follows.

## II.

We review questions of law *de novo* and findings of fact for clear error. Bankr. R. 8013. The question of whether the bankruptcy court correctly construed the North Dakota exemption statute at issue is a question of law. Stuart v. Carter (In re Larsen), 59 F.3d 783, 785 (8th Cir. 1995). Our review of the bankruptcy court's order, therefore, is *de novo*. Id.

## III.

Because North Dakota has opted out of the Code's exemption scheme, we look to North Dakota law to determine whether Debtor's interest in the Annuity is exempt. Mueller v. Buckley (In re Mueller), 215 B.R 1018, 1022-23 (B.A.P. 8th Cir. 1998). The North Dakota exemption statute in question, N.D. CENT. CODE §28-22-03.1(3), provides in relevant part that a resident of North Dakota may exempt:

"Pensions, annuity policies or plans, and life insurance policies that, upon the death of the insured, would be payable to the spouse, children, or any relative of the insured dependent, or likely to be dependent, upon the insured for support and which have been in effect for a period of at least one year;...".

The bankruptcy court held that because the "upon the death of the insured" qualification modifies the three preceding types of assets, pensions, annuities and life insurance policies, the Annuity did not fall within the scope of §28-22-03.1(3). Debtor initially argues that the "upon the death of the insured" language only modifies the immediately preceding noun, life insurance policies. Given the unique context in

which the North Dakota Legislature amended the statute in 1991, we find that the bankruptcy court's construction of the statute is correct.

Prior to 1991, the three types of assets listed in the first part of §28-22-03.1(3), pensions, annuities and life insurance policies, were separated by semi-colons. See N.D. CENT. CODE §28-22-03.1(3) (1990). Judge Hill, who also issued the opinion *sub judice*, held in 1990 that because the Legislature used semi-colons instead of commas to separate the three nouns, the modifying phrase beginning with "upon the death of the insured" only applied to life insurance policies, which is the immediately preceding noun. In re Smith, 113 B.R. 579, 585 (Bankr. D.N.D. 1990). Judge Hill expressly stated that if the Legislature had intended for the modifying phrase to apply to all three of the assets listed, it would have separated the three by commas instead of semi-colons. Id.

A year after Judge Hill issued the Smith opinion, the North Dakota Legislature amended §28-22-03.1(3) by separating the three types of assets listed in the statute with commas instead of semi-colons. 1991 NORTH DAKOTA LAWS CH. 341 (H.B. 1335). This is the only change that the Legislature made to the statute during the 1991 session. Because it is clear that the Legislature enacted the 1991 Amendment in response to Judge Hill's opinion in In re Smith, the amendment unequivocally demonstrates the Legislature's intent to overrule Judge Hill's interpretation of §28-22-03.1(3) contained in In re Smith.

Under North Dakota's rules of statutory construction, a court must give meaning to amendments to statutes. State v. Brossart, 565 N.W.2d 752, 757 (N.D. 1997). Also, it is presumed that the Legislature is aware of prior judicial constructions of a statute when it amends that same statute. Johnson v. Johnson, 527 N.W.2d 663, 666 (N.D. 1995). Thus, when the Legislature amends a statute that substantively differs from a prior and recent judicial interpretation of the same statute, a court should infer that the Legislature intended to overrule the judicial construction of the

statute announced in that prior case.  Id. at n. 2 (citing Merchant v. Pike, 83 N.W. 18 (N.D. 1900)).

Here, Judge Hill expressly stated in Smith that because the Legislature separated pensions, annuities and life insurance policies with semi-colons instead of commas, the modifying clause beginning with "upon the death of the insured"  only applied to life insurance policies.  A year later, the North Dakota Legislature amended §28-22-03.1(3) by replacing the semi-colons with commas.  This is the only change that the Legislature made to §28-22-03.1(3) during the 1991 legislative session.

Given this context in which the North Dakota Legislature enacted the 1991 Amendment, it is clear that Legislature intended to overrule Judge Hill's interpretation of §28-22-03.1(3) contained in Smith.  Thus, the 1991 Amendment demonstrates that Legislature's intent that the modifying phrase beginning with "upon the death of the insured" should modify pensions, annuities and life insurance policies.  Thus, the bankruptcy court's finding that the term "upon the death of the insured" modifies the noun "annuities" is not erroneous.[2]

Debtor further argues that because the payments under the Annuity may be payable to his beneficiaries upon his death, the Annuity does fall within the scope of §28-22-03.1(3) even if the "payable upon death" clause modifies annuities. Judge Hill rejected this argument, finding that the Legislature only intended annuities as part of a death benefit to fall within the ambit of this exemption statute.  We agree.

---

[2]     The dissenting opinion applies a "plain language" construction of the statute  and finds that the modifying phrase beginning with "upon the death of the insured" only applies to life insurance policies, just as Judge Hill found in Smith. The dissenting opinion, therefore, misses the unassailable point that the only purpose of the 1991 Amendment was to overrule Judge Hill's construction of the statute contained in Smith.  Accordingly, the dissenting opinion's construction of the statute renders the 1991 Amendment entirely superfluous, which obviously fails to effectuate the intent of the Legislature.

The term "annuity" is broad and generic and a court should examine the text and overall structure of the exemption statute in question to glean whether the legislature intended for the annuity to fall within the scope of that statute.[3] Eilbert v. Pelican (In re Eilbert), 162 F.3d 523, 527 (8th Cir. 1998) (interpreting 11 U.S.C. §522(d)(10)(E)). After reviewing the text and structure of §28-22-03.1(3), we believe that the statute does not encompass an annuity that stems from the settlement of a tort claim and that may not be payable to the debtor's beneficiaries upon the debtor's death.

First, as illustrated above, the North Dakota Legislature enacted the 1991 Amendment so that annuities are exempt only if they are payable to the insured's beneficiaries "upon the death of the insured". Thus, we believe the Legislature intended to include only annuities where the annuitant's beneficiaries have an unconditional right to receive payment after the annuitant dies to fall within the scope of §28-22-03.1(3). Here, the payments under the Annuity are payable to Debtor's beneficiaries upon his death only if Debtor dies before January 1, 2022. Thus, Debtor's beneficiaries only have a conditional right to receive the payments under the Annuity upon Debtor's death.

---

[3] The dissenting opinion's construction of the exemption statute fails to recognize this important point. The dissenting opinion points out that an annuity is defined as a financial instrument that yields "a sum of money payable yearly or at other regular intervals" and concludes that all such instruments are exempt under the plain language of §28-22-03.1(3). Thus, for example, payments to a debtor under a promissory note, which are generally made on a regular interval, must be construed as an "annuity" and would be exempt up to $100,000.00 under the dissenting opinion's analysis. Such a result in surely contrary to the intent of the Legislature and is why the Eighth Circuit requires courts to examine the entire structure of exemption statute to determine if the financial instrument in question is truly an "annuity" within the purview of the statute.

-6-

Second, in a later portion of §28-22-03.1(3), the North Dakota Legislature lists other assets that a debtor may exempt that are payable during the debtor's life time and that are not subject to the "payable upon death" qualification. The Legislature's omission of a particular provision in one place in a statute when it has included the provision in another place in the same statute evidences its intent that the provision should not apply where omitted. Tibor v. Tibor, 623 N.W.2d 12, 23 (N.D. 2001). Thus, the Legislature's omission of annuities with the assets listed in the later portion of §28-22-03.1(3) evidences its intent to exclude from the scope of the section annuities that are payable to the debtor during the debtor's lifetime but may not be payable to the debtor's beneficiaries upon the debtor's death.

Finally, the Legislature specifically dealt with what portion of the proceeds of a personal injury tort claim a debtor may exempt in another subsection of §28-22-03. Section 28-22-03.1(4)(b) provides that a debtor may exempt a payment, not to exceed seven thousand five hundred dollars, on account of personal bodily injury, not including pain and suffering and actual pecuniary loss.

A statute that specifically addresses a topic takes precedence over a statute that generally addresses the same topic. Case Credit Corp. v. Oppegard's, Inc., 701 N.W.2d 891, 896-97 (N.D. 2005). There is no question that the payments under the Annuity are on account of personal bodily injury to Debtor.[4] Thus, §28-22-03.1(4)(b) specifically addresses what portion of the payments under the Annuity that Debtor may exempt and must trump the more general treatment of annuities contained in §28-22-03.1(3).

---

[4] The dissenting opinion states that the Annuity was purchased with funds derived from the Settlement Agreement. The record, however, demonstrates that State Farm purchased the Annuity from Prudential for the benefit of Debtor as part of the Settlement Agreement that terminated Debtor's tort claim. Thus, State Farm's purchase of the Annuity itself was integral to the settlement of Debtor's personal injury tort claim and falls squarely within the ambit of §28-22-03.1(4)(b).

-7-

The dissenting opinion suggests that our conclusion that Debtor may exempt the payments under the Annuity only under §28-22-03.1(4)(b) circumvents the North Dakota Legislature's intent to allow its residents to exempt payments that are necessary for their support. This is too narrow a view of the extent to which Debtor may exempt the payments from the Annuity under §28-22-03.1(4)(b). The $7,500.00 cap contained in §28-22-03.1(4)(b) does not apply to the portion of the payments attributable to "pain and suffering and actual pecuniary loss". Thus, §28-22-03.1(4)(b) allows Debtor to exempt the entire portion of the payments under the Annuity that is attributed to either pain and suffering or that constitutes a wage substitute because of his inability to work. In re Cramer, 130 B.R. 193, 196 (Bankr. E.D. Pa. 1991) (interpreting §522(d)(11)(E)).[5]

Given this overall structure of §28-22-03.1, it is clear that the Legislature did not intend for an annuity that stems from the settlement of a tort claim and that may not be payable to the annuitant's beneficiaries upon the annuitant's death to be exempt under §28-22-03.1(3). Rather, the Legislature intended for such an annuity to be exempt to the extent allowed by §28-22-03.1(4)(b).[6]

## IV.

The 1991 Amendment to §28-22-03.1(3) and the overall structure and text of the statute indicate that the North Dakota Legislature did not intend for that subsection

---

[5] We also note that Trustee, as the objecting party, would have the burden of proof in demonstrating by a preponderance of the evidence that the payments under the Annuity are not on account of pain and suffering or actual pecuniary loss. Bankr. R. 4003(c); In re Whitson, 319 B.R. 614, 617 (Bankr. E.D. Ark. 2005).

[6] It appears from the record that Trustee would not object to Debtor amending his schedules to exempt at least a portion of the Annuity payments under §28-22-03.1(4)(b).

to encompass an annuity that is an essential element of a settlement of the debtor's personal injury tort claim and that may not be payable to the debtor's beneficiaries upon the debtor's death. Rather, such an annuity is clearly "on account of personal bodily injury" to the debtor and a debtor may exempt his interest in such an annuity under §28-22-03.1(4)(b). Debtor's interest in the payments under the Annuity, therefore, do not fall within the scope of §28-22-03.1(3). The bankruptcy court, therefore, did not err in sustaining Trustee's objection. Accordingly, we affirm the judgment of the bankruptcy court.

VENTERS, Bankruptcy Judge, dissenting

I must, respectfully, dissent. The decision of the bankruptcy court should be reversed and the Trustee's objection to the Debtors' claim of an exemption in the Annuity should be overruled based on the plain language of § 28-22-03.1(3), regardless of whether the Trustee's or Debtors' interpretation of that statute is adopted.[7]

The language of § 28-22-03.1(3) bears repeating. It provides in pertinent part:

> In addition to the exemptions from all attachment or process, levy and sale upon execution, and any other final process issued from any court, otherwise provided by law, a resident of the state may select:
>
> *    *    *
>
> (3) Pensions, annuity policies or plans, and life insurance policies that, upon the death of the insured, would be payable to the spouse, children, or any relative of the insured dependent, or likely to be dependent, upon the insured for support and which have been in effect for a period of at least one year; individual retirement accounts; Keogh plans, Roth

---

[7] I would note that the Annuity appears to be owned by State Farm Fire and Casualty Company, not Debtor Jeff Kukowski. (Appellant's App. 44) However, the parties and the bankruptcy court have treated the Annuity as if it were owned by Kukowski, and I will proceed on that assumption.

individual retirement accounts under section 408A of the Internal Revenue Code . . . , and proceeds, surrender values, payments, and withdrawals from such pensions, policies, plans, and accounts, up to one hundred thousand dollars for each pension, policy, plan, and account with an aggregate limitation of two hundred thousand dollars for all pensions, policies, plans, and accounts. The dollar limit does not apply to the extent this property is reasonably necessary for the support of the resident and that resident's dependents, except that the pensions, policies, plans, and accounts or proceeds, surrender values, payments, and withdrawals are not exempt from enforcement of any order to pay spousal support or child support, or a qualified domestic relations order under sections 15-39.1-12.2, 39-03.1- 14.2, and 54-52-17.6.

The bankruptcy court held that the Annuity is not exempt under this provision because, under its interpretation of the statute, the phrase "upon the death of the insured, would be payable to the spouse, children, or any relative of the insured dependent" qualifies "annuity," and the Debtor's Annuity, it concluded, does not qualify for the exemption because it (or some portion of it) is payable during Kukowski's lifetime.

The bankruptcy court's holding is erroneous in two respects.

First, it misconstrues the plain language of the statute.[8]  From a purely grammatical standpoint, the clause beginning with "upon the death of the insured"

_____

[8] *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ("[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms."); N.D. Cent. Code § 1-02-05 ("When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). *See also*, *In re Smith*, 113 B.R. 579, 584-85 (Bankr. D.N.D. 1990) *(*"The federal case law as well as the North Dakota Supreme Court hold that in divining the purpose or intent of a statute, court's [sic] must resort in the first instance to the language of the statute itself . . . .The language of the statute itself is regarded as conclusive of legislative intent unless the statute is clearly ambiguous or creates an irrational result.  Legislative history . . . cannot be used to create the ambiguity or the irrational result.").

does not, as the bankruptcy court held and the majority affirms, modify "pensions, annuity policies or plans, <u>and</u> life insurance policies." Rather, it modifies only "life insurance policies." To accomplish the interpretation advanced by the bankruptcy court and the majority, the statute would have to be rewritten with a comma between "life insurance policies" and "that," *i.e.*, "Pensions, annuity policies or plans, and life insurance policies, that, upon the death of the insured, would be payable to the spouse . . . and which have been in effect for a period of at least one year." But that isn't the way it is written. And until the statute is so rewritten, it does not matter whether there is a common or semicolon at the end of that list.

The statute's grammar isn't the only barrier to the bankruptcy court's interpretation of the statute; there are semantic inconsistencies as well. Why would the phrase "upon the death of the '*insured*' " apply to an annuitant and a pensioner? It is hard to imagine a clearer sign that the phrase only modifies insurance policies. In fact, the word "*insured*" appears three times in the questioned phrase, further reinforcing the conclusion that the phrase applies only to life insurance policies. In contrast, annuitants and pensioners are generally referred to as "*annuitants*" and "*pensioners*;" they are not called "*insureds.*" Moreover, it defies logic and common sense to interpret the statute as applying to pensions and annuities that are only payable upon the death of the "insured" (pensioner or annuitant). Pensions and annuities are usually, if not always, paid to pensioners or annuitants while they are alive, not upon their death, although both pensions and annuities may – like the annuity in this case – contain survivorship provisions as well.[9] Quite simply, the bankruptcy court's (and the majority's) interpretation of § 28-22-03.1(3) leads to a grammatically and semantically strained reading of the statute which is at odds with

---

[9] A pension is defined as a fixed sum paid regularly to a person (who is presumably alive), a gratuity granted (as by a government) as a favor or reward, or money paid under given conditions to a person following retirement from service or to surviving dependents. An annuity is defined as "a sum of money payable yearly or at other regular intervals." www.websters.com.

-11-

its plain language and unwarranted in light of the policy to construe exemption statutes liberally in favor of a debtor.[10]

Second, the Annuity is exempt even if the phrase "upon the death of the insured . . . and which have been in effect for at least a year" applies to annuities – the Annuity is payable to Kukowski's spouse and dependents upon his death (if that occurs within 360 months) and the annuity has been in effect for 15 years – far longer than one year.

The bankruptcy court rejected this argument, citing its earlier decision in *In re Johnson*,[11] in which the bankruptcy court found that "it was reasonable to infer that the North Dakota legislature intended for 'annuities' in the context of retirement instruments be exempted, not annuities based upon tort settlements."[12]

With all due respect, I find nothing reasonable in that conclusion. The plain language of the statute puts no limitation on the exemption based on the annuity's purpose or the source of the funds used to purchase it. The conclusion expressed in *Johnson* is wholly incompatible with the bankruptcy court's ultimate holding that § 28-22-03.1(3) only exempts annuities payable to a debtor's dependents upon the debtor's death. I suppose we all retire when we die, but it would appear that an annuity purchased as a "retirement" instrument is only useful (and the interpretation

---

[10] *See Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871, 875 (8th Cir. 1988) ( " 'the policy of [exemption] statutes is to favor the debtors, at the expense of the creditors . . . such statutes are construed liberally in favor of the exemption.' ") (citing *Forsberg v. Security State Bank*, 15 F.2d 499, 501 (8th Cir. 1926)); *Murray v. Zuke*, 408 F.2d 483, 487 (8th Cir. 1969) ("exemption laws were manifestly enacted for the relief of a debtor . . . and should be liberally construed").

[11] 108 B.R. 240 (Bankr. D.N.D. 1989).

[12] *Id*. at 242.

of the statute logical) if the statute applies to annuities payable during an annuitant's lifetime.

I am also unpersuaded by the reasoning set forth by the majority in its opinion affirming the bankruptcy court's order.

The majority places great importance on the fact that the North Dakota legislature amended § 28-22-03.1(3) to include a semicolon after the "upon the death of the insured . . . and in effect for a period of at least one year" clause, presumably in response to the statement in *In re Smith* that doing so would make that clause apply to annuities.[13]  I believe that this importance is misplaced.

Given, there is a canon of statutory interpretation which directs courts to presume that a legislature is aware of prior judicial constructions of a statute when it amends that same statute.  However, that canon of statutory interpretation does not override the fundamental rule that a court should look no further than the plain language of a statute unless doing so would produce an absurd result.[14]  Limiting the

---

[13] Judge Hill's ruling in the *Smith* case actually supports a ruling that the debtor's annuity in this case should be exempt under the statute.  On pages 587-88, Judge Hill states:

> The creation of the exemption was a means of not only shielding the proceeds from the claims of the medical providers but was also in furtherance of providing Kyle (the debtor) with minimal financial security in the future...The annuity was entirely appropriate as a means of providing Kyle with the means of survival, a way to rehabilitate himself, and the means of protecting himself as well as his dependent from improvishment.  Seven hundred and twenty-eight dollars per month is not a great sum and barely places Kyle above the poverty level even in light of his current employment which is just at minimum wage.  The social policy behind the exemptions has not been violated in this case.

In the instant case, the Settlement Agreement and Release (App., p. 64(a)) expressly provided that Kukowski was to receive $290.00 a month "commencing on 1-1-92 to continue as an income for 30 years certain and life."  This is a far cry from the $728.00 a month that Judge Hill approved as reasonable in the *Smith* case more than 15 years ago.  It was to provide some minimal level of support for Kukowski and, in the event of his early death, for his family.

[14] *See supra* n. 1

application of the "upon the death of the insured" clause to life insurance policies does not produce an absurd result. To the contrary (as noted above), it is the application of that clause to annuities and pensions which leads to an absurd result. The North Dakota legislature may have intended to amend the statute to more clearly indicate that only annuities and pensions payable upon the death of the "insured" are exempt, but we have no way of knowing that, and the amended text of the statute simply does not support that interpretation.

Moreover, I am unsatisfied by the reason given for the majority's determination that the Annuity is not exempt even though it is payable to Kukowski's dependents upon his death and has been in effect for more than one year. The majority states that § 28-22-03.1(3) "requires that there be an unequivocal relationship between the right of the debtor's beneficiaries to receive the annuity payments and the debtor's death." I do not know what is meant by "an unequivocal relationship," and I do not find any support for this statement in the text of the statute. Nor do I believe that it is logically accurate to conclude that the requirement that an annuity be payable upon the annuitant's death means that it cannot also be payable during his lifetime and still be exempt. In other words, "if not A, then not B," cannot be deduced from, "if A, then B." Under the majority's logic, pensions and annuities that are paid to a pensioner and annuitant before death would be excluded from the purview of the statute, and that position is untenable and violative of the statute.

Finally, I am troubled by the majority's position that § 28-22-03.1(3) does not apply to annuities purchased with funds derived from a personal injury tort claim because North Dakota has a specific exemption for property traceable to a personal injury claim. There is nothing in § 28-22-03.1(3) limiting the statute to a particular type of annuity or preventing a debtor from choosing the most beneficial exemption available under the statute. In light of the rule that exemption statutes are to be liberally construed in favor of the debtor, debtors are – and should be – permitted to select the exemption that is most beneficial to them.

It appears to me that the North Dakota bankruptcy court, aided now by the majority in this case, has engrafted various provisions onto the statute that are unwarranted and improper.  First, the bankruptcy court determined that only annuities purchased "in the context of retirement instruments...not annuities based upon tort settlements" could be exempted,[15]  although there is no such limiting language in the statute. Now, the bankruptcy court and the majority seem to be saying that  pensions or annuities that are paid during the lifetime of a pensioner or annuitant cannot be exempted under the statute.  Surely, the North Dakota legislature did not intend to deprive North Dakota residents and their dependents of necessary support payments, either during the lifetimes of the residents or after the death of the pensioner or annuitant; in fact, a comprehensive reading of the statute makes it clear that the legislature intended pensions, annuities, and the other types of investments enumerated in the statute to be available for the support of residents and their dependents, *without regard to the $200,000 limitation otherwise contained in the statute*.[16]

In my estimation, the bankruptcy court's and the majority's interpretation and application of the exemption statute at issue here are unjustifiably narrow, and, frankly, incorrect.  For these reasons, I believe that the Debtors' Annuity is exempt under § 28-22-03.1(3) and I would reverse the decision of the bankruptcy court.

---

[15] *Johnson,* 108 B.R. at  242.

[16] "The dollar limit does not apply to the extent this property is reasonably necessary for the support of the resident and that resident's dependents . . . ."  N.D. Cent. Code § 28-22-03.1(3).